## BROWN v. COLE ET AL.

1. **Contract:** CONSTRUCTION OF. Where a contract provided for the delivery of one hundred thousand brick, to be counted and enumerated according to the custom of bricklayers, *held*, that the contractor was bound to furnish only the number specified according to such estimate, even though as a matter of fact the number was less than one hundred thousand.

2. **Jury:** IMPEACHMENT OF VERDICT. Affidavits of jurors respecting the motives which induced an agreement to a verdict will not be received for the purpose of impeaching the same.

*Appeal from Story Circuit Court.*

WEDNESDAY, APRIL 18.

PLAINTIFF and defendant, John Cole, entered into an agreement in writing whereby said Cole sold and agreed to deliver to the plaintiff "one hundred thousand brick, of good merchantable quality, sufficient to make a good substantial wall

to a two story brick building,   \*   \*   \*   said brick to be counted and enumerated in the wall according to custom and rule of bricklayers in ascertaining the number of brick in a solid wall, not allowing anything for space occupied by openings in wall."

The petition alleged the defendants had failed to deliver forty thousand of said brick, and as the plaintiff had paid for one hundred thousand she sought to recover for the brick not delivered.

The defendants, by way of counter-claim, alleged that they had delivered more brick than the contract called for, which the plaintiff had received and accepted, and they sought to recover for the brick delivered in excess of the contract.

There was a trial by jury; verdict for defendants, and plaintiff appeals.

*Rainbolt & Barnes*, for appellant.

*McCarthy, Stevens & Underwood*, for appellees.

SEEVERS, J.—I. Counsel for appellant state the questions for determination to be as follows: "Aside from the question

1. CONTRACT: construction of.

of defective and irregular verdict of the jury, it seems that all other questions in this case are merged in these two, to-wit: Does the method pointed out by the contract for ascertaining the number of brick mean no more than, and nothing different from, the rule known as 'masons' measurement;' and, shall the openings in the wall, under the reading of the contract, be considered filled with brick in arriving at the number of brick delivered by defendants." The question, then, is how, under the terms of the contract, are the brick to be counted. We are unable to see any ambiguity in the contract, either latent or patent, and the contract itself provides the rule for " counting and enumerating " the brick. If the contract had provided for the delivery of one hundred thousand brick, and there stopped, we suppose the plaintiff would have been entitled to that number of brick by actual count, but the brick were to be " counted and enumerated in the wall according to the custom and rule

Brown v. Cole.

of bricklayers in ascertaining the number of brick in a solid wall, not allowing anything for space occupied by openings in wall." This, then, is the way the parties have determined the brick shall be counted. It is true that the rule adopted by bricklayers is at best but an arbitrary estimate, and it is not pretended that the actual number of brick in the wall is thereby ascertained. This, however, is immaterial, because the parties have stipulated the count shall be made in accordance with that rule. It must be evident that an actual count of the brick was not intended, for the contract contemplates a counting " in a solid wall." Now, it is simply impossible to count and ascertain how many brick are in a solid wall more than one brick in thickness. The wall was to be solid, and no allowance made for openings. The Circuit Court having construed the contract in accord with the foregoing view, it follows no error was committed in so doing.

II. One of the jurors filed an affidavit that he was sick, and in consequence thereof had agreed to the verdict. And another juror stated in an affidavit that he "agreed to the verdict solely on account of the sickness of said juror and the apprehended injury to him by longer confinement, and out of regard for his personal health; that, had said juror been in good health, I would not at the time I did have consented to said verdict."

2. JURY: impeachment of verdict.

Counter affidavits were made and filed by other jurors tending strongly to show that the sickness of the juror was quite mythical; and we presume the court below overruled the motion for a new trial on the ground that jurors who would so stultify themselves as these men have done were unworthy of belief, and in this view we concur. Besides this, affidavits of this character cannot be received or considered for the purpose of impeaching a verdict. *Cowles v. C., R. I. & P. R. R. Co.,* 32 Iowa, 515, and authorities cited.

AFFIRMED.