George W. Baxter, Administrator, v. The City of Cedar Rapids, Appellant.

**Municipal Corporations:** · sidewalks: *Jury question.* In an action against a city for injuries resulting from a fall caused by the end of a plank of a street crossing next the sidewalk projecting above the sidewalk, witnesses for plaintiff testified that the plank was so decayed and worn that it would not hold nails, and that it was warped so that the end next the walk was sprung, and when not under pressure, its upper surface was three or three and a half inches above the level of the walk. Other witnesses for plaintiff stated that the difference in level was less, some placing it at an inch. Defendant's witnesses stated that the end of the plank was securely nailed, and that it was only one or one and one-half inches higher than the other planks. *Held,* that it was for the jury to determine the condition of such plank, and its height above the walk.

Same. It cannot be said as a matter of law, that an obstruction two inches high in a sidewalk or street crossing is not such a defect as will render the city liable for injuries caused by it.

Notice of defect. Where such defect in the crossing had existed for ten days or two weeks, and it was in a thickly inhabited part of the city, and much used, defendant was chargeable with notice of its condition in time to repair it before the accident.

Contributory negligence: *Jury question.* Plaintiff had lived in the city only five days at the time of the accident. It was almost dark and the street lamps had not been lighted. She had passed over the crossing seven or eight weeks before, but it was not shown that the defect then existed, or that she knew of it at the time of the accident. She testified that at the time of the accident it was quite dark, and, as she went from the pavement upon the crosswalk, her foot caught in the middle plank, and it threw her; that "I was walking fast as I usually do. I am a very spry walker. The middle plank of the three on the crosswalk caught my foot. It was done so quick I could hardly tell. * * * I was walking as I usually walk,—lifting my feet well from the ground. I did not notice anything that night in reference to the sidewalk." *Held,* that the evidence did not show that she was negligent in not discovering the condition of the walk.

**Evidence:** PRIVILEGED COMMUNICATION. In an action against a city for injuries caused by a defective sidewalk, evidence of plaintiff's physicians regarding her condition, and the information obtained while treating her, when called as witnesses for defendant, is within the prohibition of Code 1873, section 3643, providing that no physician shall be allowed to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice.

SAME. The court properly excluded a question by defendant, asking one of such physicians to state "any conversation, if any you had, with plaintiff, in which she asked you whether or not the injury in the hip could not arise from the fact that she had to do the most of her standing on her right hip, and because she was compelled to use a crutch, and not use her left limb?" Since the evidence called for, was within the statute, and said evidence was immaterial.

WAIVER. The fact that plaintiff produces one of several physicians as his witness does not warrant defendant in claiming that the statutory privilege has been waived as to the testimony of the other physicians whom he offers as witnesses for the defense.

INSTRUCTION. Though an instruction that a person, in passing along a street, is required to use more caution when it is dark than in the day time may properly be given, it merely states a fact which · is a matter of common observation, and which the jury must consider under other proper instruction, and hence a refusal to so instruct is not prejudicial to defendant.

**Misconduct of Jurors.** In an action against a city for injuries caused by a defective sidewalk, several members of a jury urged that a large verdict be returned to teach defendant a lesson, for the reason that, if any one became involved in trouble, when within its limits, defendant would punish him. *Held*, not to show passion, prejudice, or misconduct, and that the matters in question so inhered in the verdict that they may not be shown by affidavit.

**New Trial.** In a personal injury case a new trial was asked by defendant because of newly discovered evidence that plaintiff's health was impaired before the accident. An affiant stated that he knew plaintiff at a certain town for fifteen years, and until she moved to defendant city; that he knew she was continually complaining of ill health while she lived there; "that it was generally reputed that she had ill health, and I know the same myself," and she claimed the climate there did not agree with her, "but the climate where she did live after leaving here did agree with her " *Held*, too indefinite to require the granting of a new trial.

SAME. A new trial will not be granted because of newly-discovered evidence that is inherently conflicting.

REDUCING VERDICT. It is questionable whether a case where the court overrules a motion for new trial and *then* gives plaintiff an "opportunity" to take judgment for less than the verdict, comes within the practice under which courts make the overruling of a motion for new trial depend upon the acceptance of a reduced verdict. However that may be, it is proper to attach such condition to overruling such motion and a reduction so ordered is not a finding by the court that the verdict was excessive or the result of passion and prejudice.

APPEAL. Where affidavits in support of a motion for new trial are contradicted by counter-affidavits, a denial of a new trial will not be disturbed on appeal.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

FRIDAY, OCTOBER 29, 1897.

ACTION at law to recover for personal injuries which are alleged to have been caused by negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals from that judgment. After its appeal was perfected, it filed a petition for a new trial. A demurrer to that petition was filed and sustained, and, the defendant refusing to plead further, the petition was dismissed, and costs were taxed to the defendant. From that order, the defendant, also, appeals.— *Affirmed.*

*Warren Harman* and *J. J. Powell* for appellant.

*Rickel & Crocker* for appellee.

ROBINSON, J.—In the evening of September 3, 1894, Mrs. C. A. Baxter, the plaintiff's intestate, while walking in a street of the defendant, fell, and, it is claimed, received severe and painful injuries, which

caused her death about the first day of July, 1895. The plaintiff alleges that the fall and injuries of the decedent were caused by a defective street crossing, for which the defendant is liable. The defendant denies all negligence on its part, and alleges that the injuries sustained by the decedent, for which a recovery is sought, were caused by negligence on her part. The verdict of the jury was for the sum of five thousand, seven hundred and fifty dollars. A motion for a new trial was filed by the defendant, and proceedings were had thereon as shown by the following record: "The court overruled defendant's motion for new trial, to which ruling the defendant duly excepted. The court then gave the plaintiff the opportunity of accepting three thousand dollars judgment and costs, instead of amount of verdict. Plaintiff accepts the three thousand dollars judgment and costs of suit. Defendant excepts. Thereupon the court entered judgment for three thousand dollars in favor of plaintiff. Defendant excepts." This action was commenced by Mrs. Baxter to recover for the injuries she claimed to have sustained. In an amendment to her petition she alleged the assignment to her by her husband, George W. Baxter, of all claims which had accrued to him in consequence of the injuries she had sustained. After her death, Baxter, as administrator of her estate, was substituted as plaintiff, and the cause was prosecuted in his name until after judgment was render and an appeal therefrom taken. After the petition for a new trial was filed, the death of Baxter was suggested, and E. H. Crocker, as administrator, was substituted as plaintiff.

I. On the twenty-ninth day of August, 1894, the decedent and her husband moved from Spirit Lake to

Cedar Rapids. At the time of the accident in question the plaintiff was walking rapidly to her home. At the corner of Fifth street and Sixth avenue, she turned from the sidewalk to step onto the street crossing. Her right foot was caught by a plank of the crossing, which was raised above the surface of the sidewalk; and she was thrown with much force to the crossing, and severely injured. The sidewalk at that point was of stone, and the part of the crossing next to it was made of three planks, two inches thick, nailed together to crosspieces, and abutted against the walk. The upper surfaces of two of the planks were about level with the top of the sidewalk, but the end of the middle plank, which was the one which caused the decedent to fall, was somewhat above that level. There is much dispute as to the condition of that plank, and its height above the walk. Witnesses for the plaintiff contend that it was so decayed and worn that it would not hold nails; that it was warped in such a manner that the end next the walk was sprung, and, when not under pressure, its upper surface was three or three and a half inches above the level of the walk. Other witnesses for the plaintiff state that the difference in level was less, — some placing it at one inch. Witnesses for the defendant state that the end of the plank was sound and securely nailed and that it was only an inch or an inch and a half higher than the other planks. In view of this conflict in the testimony, it was the province of the jury to determine the condition of the plank, and its height above the walk. There was testimony which tended to show that the defect in the crossing of which the plaintiff complains had existed for ten days or two weeks, and that the crossing was in a thickly inhabited part of the city, and much used. The plaintiff had, during a visit to Cedar

Rapids, passed over the crossing seven or eight weeks before; but it is not shown that the alleged defect then existed, nor that she knew of it at the time of the accident. When that occurred, it was almost dark, but the street lamps had not been lighted. Her testimony was taken and used on the trial. She stated that: "It was quite dark, and when I came to the corner I turned; and, as I came from the pavement onto the crosswalk, my foot caught on the middle plank and threw me on my left knee. I was walking fast at the time, as I usually do. I am a very spry walker. The middle plank of the three on the crosswalk caught my foot. It was done so quick I could hardly tell. * * * I was walking as I usually walked,—lifting my feet well from the ground. I didn't notice anything that night in reference to the sidewalk." We do not think the evidence shows that the decedent was negligent in not discovering the condition of the walk. *Owen v. City of Ft. Dodge,* 98 Iowa, 281. And it appears from the length of time the defect in the crossing had existed, and its location, that the defendant is chargeable with knowledge of it in time to have put the crossing in good condition before the accident occurred.

II. Several different physicians treated the decedent after the accident, and one of them testified as a witness for the plaintiff. The defendant placed several of the others on the witness stand, and asked them questions in regard to the condition of the decedent, and the information they obtained while treating her. The court, on the objection of the plaintiff, refused to receive their testimony, on the ground that the information sought to be obtained from them was privileged. The ruling was based on section 3643 of the Code of 1873, which contains the following: "No * * * physician shall

be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice.    *    *    * Such prohibition shall not apply to cases where the party in whose favor the same are made waives the rights conferred." The information sought to be elicited from the physicians was within the prohibition of that section. *Prader v. Association*, 95 Iowa, 149. But the defendant contends that the plaintiff waived the prohibition by placing one of the physicians on the stand as a witness in her behalf. Nothing in the statute justifies such a claim, and we are of the opinion that the ruling of the court was right. We think the court was also right in refusing to permit one of the physicians of the decedent, called by the defendant, to answer a question which it asked, as follows: "Will you state any conversation, if you had any, with Mrs. Baxter, in which she asked you whether or not that injury in the hip could not arise from the fact that she had to do most of her standing on her right hip, and because she was compelled to use a crutch, and not use her left limb?" Whether the decedent ever asked the question indicated was wholly immaterial, and, if the facts were as assumed in the interrogatory, they were privileged, and within the prohibition of the statute.

III. The defendant asked the court to instruct the jury that, if "the crosswalk was only raised about two inches above the sidewalk to which it was an approach, then the crosswalk was reasonably safe and convenient for the public. A simple rise of two inches from a sidewalk to a crosswalk would not be such an obstruction that you could find that it was not in a reasonably safe condition, and in that case you will

find for the defendant." The court refused the instruction, and of that ruling the defendant complains.

9      It seems that there is authority for the claim that the loose end of the plank in a walk which rises two inches above the other portions of the walk is not a defect for which the municipality in which it exists is liable. *Weisse v. City of Detroit*, 105 Mich. 482 (63 N. W. Rep. 423). See, also, *Yotter v. City of Detroit*, 107 Mich. 4 (64 N. W. Rep. 743). It may be that the conclusions reached in those cases were authorized by the facts upon which they were based, but we do not think it can be said, as a matter of law, that an obstruction in a sidewalk or street crossing two inches high cannot be such a defect that the city or town in which it exists may be liable for injuries which it causes. It is manifest that such an obstruction may easily cause most serious accidents to persons using the walk, even though they be free from negligence. Indeed, at times they may be much more dangerous than larger obstructions, because less readily discoverable. Whether an obstruction or other defect in a walk is of a character to make the municipality which permits it to exist responsible for it, does not necessarily depend upon the size of the defect, but upon the effects which may reasonably be apprehended from it upon persons who use the walk in a proper manner. These will vary with the circumstances of different cases, and whether the municipality is liable for a defect in its streets or walks will, as a rule, be a question of fact, to be determined by the jury under the instruction of the court, and not a mere question of law, to be determined by the court alone. The evidence in this case authorized the jury to find that the defect in question was of a serious character, even though the plank which tripped the decedent was not more than two inches higher than the sidewalk, and the instruction under consideration was properly refused.

IV.  The appellant complains because the court refused to give an instruction which it asked, to the effect that a person, in passing along a public street, is required to use more caution and be more watchful when it is dark than in the daytime. The instruction might properly have been given, but it merely stated a fact which is a matter of common observation, and which the jury must have considered under the charge given.  Hence we do not think the defendant could have been prejudiced by the refusal of the court to give the instruction asked.

V.  The appellant insists that the court erred in not granting a new trial because the damages allowed by the jury were excessive, and showed passion and prejudice.  It is said that the action taken by the court which caused the plaintiff to accept judgment for much less than the amount fixed by the verdict shows that it found that the jury was influenced by passion and prejudice to fix an excessive amount in its verdict.  The record shows that the action of the court in regard to a new trial was unusual. It overruled the motion for a new trial, apparently without condition, and then gave the plaintiff "the opportunity" to take a judgment for three thousand dollars and costs, and the plaintiff took advantage of the opportunity to remit a part of his recovery.  That does not show that the court found that the verdict was for an excessive amount, and we cannot say that it was. But conceding that the effect and purpose of what was done were to overrule the motion for a new trial on condition that the plaintiff would accept judgment for the amount for which it was rendered, and, if he would not, that the motion would be sustained, that does not show that the district court found that the jury was influenced by passion and prejudice in reaching its verdict.  It merely shows that in the opinion of the court the evidence did not authorize a verdict for so

large an amount as that fixed by the jury. Juries may, and frequently do, err in estimating the amount of a recovery, when there is no ground for claiming that they were influenced by prejudice or passion. Authorities are cited to sustain the claim that, when a trial court finds that a verdict for damages is not sustained by the evidence, it should grant a new trial, and cannot rightly fix a smaller amount, which the successful party may accept, or submit to a new trial. We are aware that there are authorities of high standing which support the rule for which the appellant contends. But the well established rule in this state is for a trial court, which is of the opinion that a verdict for an excessive amount has been returned, to give the successful party the option to accept judgment for the amount which the court believes to be just, or to submit to a new trial. *Duffy v. City of Dubuque*, 63 Iowa, 176, and cases cited therein; *Van Winter v. Henry County*, 61 Iowa, 691, and cases therein cited. The case of *Darland v. Wade*, 48 Iowa, 548, upon which the appellant relies is not in point. The facts and the opinion in that case distinguish it from cases like this. What was done in this case to avoid a new trial on the ground of an excessive recovery, appears to have been authorized by the settled practice in this state.

VI. The motion for a new trial was supported by the affidavits of jurors which stated, in effect, that several members of the jury urged that a large verdict be returned against the defendant, to teach it a lesson and punish it, for the reason that, if any one became involved in trouble when within its limits, the defendant would punish him. It is urged that those affidavits show passion and prejudice and misconduct on the part of the jury. They were contradicted by counter-affidavits, but, if they had not been, they would not have shown ground for setting aside the verdict, because they merely tended to show arguments

or reasons which were urged to increase the amount of the recovery. Matters of that kind so far inhere in the verdict that they cannot be given any weight for the purpose of setting it aside. *Wright v. Telegraph Co.,* 20 Iowa, 196; *Griffin v. Harriman,* 74 Iowa, 438; *Wilkins v. Bent,* 66 Iowa, 531; *Fox v. Wunderlich,* 64 Iowa, 192; *Brown v. Cole,* 45 Iowa, 603; *Bingham v. Foster,* 37 Iowa, 340; *Garretty v. Brazell,* 34 Iowa, 104; *Cowles v. Railroad Co.,* 32 Iowa, 517; *Hall v. Robison,* 25 Iowa, 92.

VII. The last claim of the appellant which needs to be considered at any length is that the court erred in refusing to grant a new trial on the ground of newly-discovered evidence. That ground was set out in both the motion and the petition for a new trial. It was included in the motion by an amendment filed seventeen days after the verdict was returned, and fourteen days after the original motion was filed, and was supported by affidavits. Some of those relate to a mistake alleged to have been made by a witness for the city which is of so little consequence that it will not be further considered. So far as the affidavits can be regarded as material, they relate to the claims made on the trial, and testimony offered to support it, to the effect that Mrs. Baxter's general health was good before the accident. The affidavits tend to show that an attorney for the defendant went to the former home of Mrs. Baxter, in Spirit Lake, in July next preceding the trial, which commenced in the latter part of October, 1895; that the purpose of his visit was to ascertain something as to the condition of Mrs. Baxter's health during the many years she resided there; that he spent two or three days in the town, and talked with a large number of people who had been her neighbors, and with men who had business dealings with her family, and with all persons, so far as he could ascertain, who would be likely to know

anything of her health, but that he found that a strong sympathy for the Baxter family, and a strong prejudice against the defendant, prevailed, and he could not learn anything to the advantage of the defendant. The affidavits also tended to show that the attorney talked before the trial with all the persons in Cedar Rapids who, so far as he was able to learn, could give him any information in regard to the health of Mrs. Baxter, but without success; that, after the trial, he had obtained the affidavit of A. M. Johnson, a resident of Spirit Lake, and that much testimony could now be procured to show that Mrs. Baxter's health was poor for years prior to her death. The affidavit of Johnson was also attached to the motion, and showed that he knew Mrs. Baxter at Spirit Lake about fifteen years, and until she moved to Cedar Rapids; that he knew that she was continually complaining of ill health while she lived there; "that it was generally reputed that she had ill health, and I know the same myself, and she claimed the climate at Spirit Lake, Iowa, did not agree with her, but the climate where she did live after leaving here did agree with her." We are of the opinion that this affidavit was not sufficiently definite and certain to require that a new trial be granted. Whether the statement, "and I know the same myself," refers to what Mrs. Baxter's health was reputed to be, or to the affiant's knowledge of what it was in fact, is not clear, and the affidavit does not show that her health was impaired before the accident. On the contrary, if the closing statement is of any value, it tends to show that the cause of her alleged ill health was removed when she went to Cedar Rapids. We think the motion for a new trial was properly overruled. The statements in regard to newly discovered evidence contained in the petition for a new trial are more important. The petition was filed about four months after the trial was ended, and shows that after the motion for a new trial

was overruled and judgment was rendered, an attorney
for the defendant again went to Spirit Lake, and talked
with a number of persons, and discovered much evi-
dence which can be obtained, and which will contradict
testimony given for the plaintiff, and show that for
years before the accident, while Mrs. Baxter resided
at Spirit Lake, she complained of a stomach trouble, of
a heart trouble, of dropsy and swollen limbs, of bloat-
ing, of difficulty in breathing, of being unable to sleep
when lying down, and that she was improved in health
by going away from home.   The petition shows that
some of the newly discovered evidence will be given by
persons who reside in Cedar Rapids, and of whom some
were witnesses on the trial; that some of those persons
will show that Mrs. Baxter stated after the accident
that she had suffered much while residing at Spirit
Lake from stomach trouble; that others will tetstify
that she was quite strong and well after the accident,
doing a large part of the work and all of the cooking
for a family of ten or twelve persons, including board-
ers; and that the physicians who attended her after
the accident will prove that her sickness and death
were not in any manner caused by the injuries she
received in falling on the street crossing.  Some
of this testimony would doubtless have been
material and competent on the trial of the cause,
but that of the physicians would have been incompe-
tent, for reasons already shown, or it should have been
offered on the trial.  No sufficient reason for not exam-
ining more fully the witnesses who actually testified is
shown, and we are satisfied that if the averments of the
petition are true, and if the defendant had been as dili-
gent before as since the trial, it would have discovered
the competent and material evidence for which it now
asks a new trial.   Moreover, it is to some extent con-
flicting.  To show that Mrs. Baxter was vigorous and

apparently well after the accident would tend to show that her health was not permanently impaired when she was at Spirit Lake. None of the newly discovered evidence tends to show that the defendant was not liable for the injuries which resulted from the accident. Upon a consideration of the entire record, we conclude that the court was right in sustaining the demurrer to the petition for a new trial because of a lack of diligence to procure the newly-discovered evidence for use on the trial, and for the further reason that it does not impress us as being of sufficient importance to justify a new trial. The evidence is ample to sustain the judgment, and there was no error in the proceedings which was prejudicial to the defendant. The judgment of the district court, and its order sustaining the demurrer to the petition for a new trial, and taxing costs thereon to the defendant, are AFFIRMED.