C. N. CRAWFORD, Appellee, v. EMERSON CONSTRUCTION COMPANY, S. RAY EMERSON and DON EMERSON, Appellants.

No. 43595.

OCTOBER 20, 1936.

380

Kimball, Peterson, Smith & Peterson, and Healey & Reynolds, for appellants.

Thos. E. Mullin and E. F. McEniry, for appellee.

HAMILTON, J.—The building that was being wrecked or torn down at the time this injury occurred was located at the southeast corner of Montgomery and Pine Streets in the city of Creston, Iowa. Pine Street runs north and south and Montgomery Street east and west. The building faced Pine Street, the north side of the building extending out to the edge of the sidewalk. The building was owned by the Creston Finance & Realty Company, of which H. F. Harsh was president, and had been occupied by the Parrott Tire & Battery Company until there was a fire which occurred March 20, 1934. The main building was a two-story brick structure, and at the extreme east, and adjoining the east end of the brick structure was a lean-to, one-story structure, occupied by the plaintiff at the time of the injury as a mechanic's shop. On April 17, 1934, the defendant construction company had been awarded the contract for tearing down the old building and erecting a new one in its place. The injury was caused by pushing a large section of the east wall over on to the roof of the shop, which plaintiff, with the actual knowledge of defendants, had entered only a few minutes before.

Three grounds of negligence are specified in the petition as follows:

"1. That with full knowledge of the fact that the plaintiff was in said adjacent building, the defendants continued to tear down said wall, and permitted the bricks to fall on the building occupied by plaintiff.

"2. That the defendants, with full knowledge of the dangerous position of the plaintiff, failed to give notice or warning to the plaintiff of the danger of the falling wall.

"3. That the defendants, negligently and carelessly, pushed or caused to be pushed a part of said wall to the east, well knowing that said wall would fall on the building occupied by the plaintiff.

"That as a result of the falling of said wall, the plaintiff suffered great physical injuries, to-wit:" (Specifying the in-

juries and damages and praying for judgment in the sum of $10,000 and costs.)

At the close of plaintiff's evidence, defendants moved for directed verdict. The motion in substance alleged that the plaintiff had failed to establish any of the alleged grounds of negligence; that the evidence conclusively showed the plaintiff was a mere trespasser or licensee; that plaintiff went upon the premises and entered the building with full knowledge that the same was being torn down, and assumed all the risks and hazards in connection therewith, and that, as a matter of law, the plaintiff was guilty of negligence which directly contributed to his alleged injuries. In ruling upon the motion the court said:

"Let the record show the motion as a whole is overruled. The notion the court has of this case, there is only one ground of negligence that could in any way be made the basis of recovery, and that would be the third ground of negligence set forth in the plaintiff's petition. The evidence affirmatively shows as to ground One and Two that the plaintiff had full knowledge of the things that were being done by the defendants in the way of tearing down the building in controversy. * * * and he assumed whatever risk there was incident to the fact of going into the building as they were tearing it down in the way they then were tearing it down, and he would be guilty of contributory negligence by going into the building if his injuries were caused solely and only by reason of the ordinary incidents attending the tearing down of the building in controversy; he had a full knowledge of those facts and he was clearly guilty of contributory negligence if he received his injuries from that source, but as the record now stands it seems to the court that there was an act done affirmatively by the defendants in the pushing of the wall to the east which could not or might not be anticipated by the defendant at the time that he entered the building where he was when he was injured. It seems to the court that that ground of negligence is the only one that the court can submit to the jury in connection with this matter, and the motion will be sustained insofar as it affects grounds One and Two set forth in the petition, and will be overruled as to Ground Three."

The trial of the case was resumed, and at the close of all the evidence the defendants renewed the motion made at the close of

the plaintiff's testimony for a directed verdict, still insisting that the third ground of negligence failed to state a cause of action, and that the evidence failed to prove any negligence on the part of the defendants, but affirmatively showed that the plaintiff was guilty of contributory negligence in going into this building and in remaining there for that length of time; that the evidence disclosed he was in the building, knowing that it was a dangerous location and that the tearing down of the building was in progress. This motion was overruled, by the trial court, the court making the statement in connection with his ruling: "* * * that there is a very grave question here whether the plaintiff isn't guilty of contributory negligence such as bars the right to recover under the law. The Court believes that he will let this case go to the jury and let the jury pass upon the whole matter under proper instructions." The case was then submitted to the jury under carefully prepared instructions, concerning which there is no complaint in the record. The jury returned the verdict of $5,500 in favor of the plaintiff. The defendants filed a motion asking the court to set aside the verdict and grant a new trial, and in arrest of judgment, and for judgment notwithstanding the verdict, by the terms of which all the matters now urged in appellants' assignment of errors were properly presented to the trial court. This motion was overruled, the court dictating into the record quite an elaborate statement in support of his ruling, at the conclusion of which he made this statement:

"There is another matter in connection with this case, the Court believes that this verdict is more than should stand. The Court has heard all this testimony, he observed the plaintiff himself, he has heard the testimony in regard to the extent of his injuries and all those things, and he feels that a verdict of $3,500.00 would amply recompense the plaintiff for such injuries as he sustained in this case, and the verdict will be reduced to that amount, and with that condition the motion for a new trial will be overruled, and the defendants and the plaintiff are each given an exception. Prepare a judgment order accordingly."

A judgment order was prepared which recites:

"That the verdict rendered by the jury herein was excessive in the sum of $2000.00 and said verdict should be reduced

to the sum of $3500.00 and interest thereon at five per cent per annum from September 20, 1935.".

And judgment was entered accordingly. Both parties have appealed to this court. The plaintiff's appeal is from the ruling of the court reducing the verdict and from the judgment rendered thereon in the sum of $3,500. The defendants will be designated as appellants. The record is quite voluminous, and it will not be possible to discuss at length the evidence in connection with each and every assignment of error. But we have carefully read the entire record and considered the legal propositions presented in the assignment of errors, which will be noticed in their order.

It is first urged that the plaintiff was a mere licensee or trespasser upon the premises, and the defendants therefore owed him no duty save not to injure him intentionally, wilfully, wantonly or maliciously; and as a corollary to this first assignment it is asserted in assignment No. 3 that the plaintiff had failed to prove any intentional, wilful, or malicious act on the part of the defendants. The trial court specifically found that the uncontradicted evidence showed that the plaintiff was in possession of the lean-to under an oral agreement with the owner, entered into after the date of the fire, by which he agreed to pay a certain sum of money per month, and that he could occupy the building until the same was needed by the owner. It is the claim of the appellants that while there is no dispute or no evidence contradicting this finding, appellants do contend that the plaintiff failed to establish by competent proof such oral lease. We have given careful attention to appellants' argument in this respect, and we are abidingly satisfied, after carefully considering all the evidence on this proposition, that there can be but one conclusion reached. The trial court was right in holding that the plaintiff was rightfully in possession of the shop or lean-to at the time he was injured, and that he was not a mere trespasser or licensee. This being the case, a large portion of appellants' argument which has for its basis the claim that the plaintiff was a mere licensee has no application.

 There was no claim on the part of the plaintiff that the defendants intentionally caused the wall to fall on him, and the court in its instruction so told the jury. Hence, we are to consider this case on the theory that at the time the plaintiff was

injured he was in a place where he had a right to be. This being true, the defendants in wrecking or tearing down the building were bound to use reasonable care for the safety of the plaintiff or others who were in their rightful places. Heinmiller v. Winston Bros., 131 Iowa 32, 107 N. W. 1102, 6 L. R. A. (N. S.) 150, 117 Am. St. Rep. 405; Wolf v. Des Moines Elevator Company, 126 Iowa 659, 98 N. W. 301, 102 N. W. 517. Whether the defendants exercised that degree of care that an ordinarily reasonable, prudent person would exercise under like or similar circumstances was, under the evidence in this case, clearly a question for the jury. McKee v. Iowa Railway and Light Company, 204 Iowa 44, 214 N. W. 564.

It is true, as appellants' counsel contend, that the construction company was not required to stop work entirely because the plaintiff had gone into this building. They could proceed in the ordinary and usual way, taking into consideration the rights and duties they owed to the plaintiff and his property, and there are many cases cited by appellants in argument which so hold. But it does not follow that the construction company could put dynamite under the wall of the building or do anything else extra hazardous in the way of tearing down the wall under the circumstances mentioned, when they knew that the plaintiff was in this building, or, as reasonable men, should have known that he might still be in the building, that he had just entered a few minutes before.

■■■ Was the plaintiff guilty of contributory negligence as a matter of law? This matter is presented in divisions 4 and 5 of appellants' assignment of errors. The court submitted the question of contributory negligence under proper instructions to the jury, and in this appellants very earnestly contend the court committed reversible error. We think the defendants' own evidence clearly refutes this contention. The evidence shows without dispute that Don Emerson, in charge of the tearing down of the building and the men who were employed to do the work, considered the question of the roof of the lean-to being sufficient to carry the weight of the bricks as they were torn down and pushed over on to this roof. There had been some talk about it, and the contractors had concluded that it was safe, that they thought the roof would support the weight, and that they could let the bricks from the east wall fall upon this roof and then shove the bricks off the lean-to into the trucks. If they were

right in their conclusion, then the plaintiff was in a safe place when he entered this lean-to the morning of the injury. At the time the plaintiff asked Don Emerson for the key to the lean-to, the work of tearing down the east wall had not yet commenced. They were still tearing down the partition walls. But very soon thereafter they commenced to take out a window frame in the north half of the east wall and in doing this they had to loosen up some of the bricks around the frame. It appears that above this window frame there had been some repairing in the wall and the new brick work had been laid in Portland cement, which held the bricks firmly together over a small space around the window, and instead of the bricks giving way a few at a time, a large section of the wall, because of this solid cement portion held together,—as one witness put it, ''about two tons of brick''—went over onto this roof and crashed through it onto the plaintiff, causing the injury.

Appellants in argument contend that plaintiff was bound to anticipate the danger, and in going into this building he was guilty of contributory negligence. Yet the defendants' own evidence, by the men who were tearing down the wall, showed—and one of the defendants, Don Emerson himself, so testified—that they expected this roof would hold up the weight. We think it is apparent that defendants did not expect so much of the wall going over at once. How, then, can it be said that plaintiff was guilty of contributory negligence as a matter of law in entering his own shop for a few minutes, when the very men who were tearing down the building believed the roof was sound and strong enough to carry the weight, and therefore the plaintiff would be in a safe place while inside of this building? Whether or not the plaintiff, in the exercise of that degree of care and caution for his own safety, or whether or not the defendants, in the exercise of that degree of care and caution for the safety of others, should have anticipated the thing which occurred, was a matter for the jury to determine.

Under such circumstances we think the court properly submitted the question of contributory negligence to the jury.

Counsel for appellants contend, however, that because the court sustained the defendants' motion to direct a verdict at the close of plaintiff's testimony as to the first two grounds of negligence alleged in the petition, and stated at the time of his ruling that as to the first two grounds of negligence, had the

plaintiff received his injuries under the circumstances alleged in these two grounds, he would have been guilty of contributory negligence, and since no appeal has been taken from such ruling, this finding becomes the law of this case. The thought of the court seemed to be that had the plaintiff received his injuries while the work of wrecking the building was proceeding in the ordinary and usual way, it would have been his duty to antici- pate danger to such extent and avoid it; failure to do so would be contributory negligence as a matter of law; but that he was not required to anticipate and assume that the tearing down of the building would be done in the way and manner alleged in the third ground of negligence, namely, by pushing the east wall over onto the building; and that whether or not the plaintiff was guilty of contributory negligence under such circumstances, would depend upon whether plaintiff exercised that degree of care and caution for his own safety that an ordinarily careful and prudent person would for his own safety have used under the same or similar circumstances.

Counsel for appellants earnestly contend that this cause of action was in one count, and that when the court found that the plaintiff was guilty of contributory negligence as to the first two allegations of negligence, this was a ruling of the court which became the law of the case unless appealed from, and that ap- pellee has not appealed from that part of the court's ruling, and that it could not be contributory negligence as to the first two grounds of negligence alleged and still be a matter for the jury as to the third ground.

Referring back to the court's ruling heretofore set out, it will be noticed that the legal effect of the ruling was to with- draw from the consideration of the jury the first two grounds of negligence, the court clearly giving his reason therefor, namely, that a cause of action based on these two grounds, even though proven, would have to fail because the plaintiff was aware of all the facts which would go to substantiate these two alleged grounds. He was on the building that was being torn down, saw the men at work and assumed the hazards ordinarily incident to work of tearing down a building, in the way and manner the work was then being done to his own knowledge, and any danger incident to this method, and one who, knowing and appreciating danger, voluntarily assumes the risk of it has no just cause of complaint against another, and his very presence at the place of

danger where bricks and debris from the tearing down of the wall would be likely to fall upon him and injure him, would, as a matter of law, render him guilty of contributory negligence because his own conduct contributed directly to the injury. In this case there is abundant evidence that plaintiff had knowledge of the danger ordinarily incident to tearing down the walls of the building, but on the other hand there is an entire absence of any evidence that he had knowledge of the extra hazardous method that was actually used in pushing four thousand pounds of brick and mortar all at once upon this roof and within a few minutes from the very time Emerson and the workmen knew he had entered the shop.

Contributory negligence may exist under one set of facts, and be a question for the jury under some other set of facts, because under one set of facts the minds of reasonable men could not differ in passing upon the question of the conduct of the plaintiff, while under the other facts the minds of reasonable men might differ. For instance, had the roof of this lean-to consisted of common glass, the plaintiff would, of course, have to realize that an armload of brick or debris might come tumbling down and crash through upon him. Upon the other hand, when he realized that he had above his head a tin roof, supported by two-by-twelve ceiling joists and two-by-six roof joists covered with sheeting, he might reasonably assume that the brick and debris falling down in the usual and ordinary way would not crash through the roof in upon him, and therefore that he was in a reasonably safe place. And knowing that Emerson, the defendant, knew that he had just entered his shop, would it not be a question for the jury to determine, under such circumstances, whether or not he had a right, acting as a reasonably prudent person, in assuming the defendants would not so negligently do the work as to cause two tons of brick to be pushed over onto the roof above his head?

In this case there was no evidence at all that the plaintiff would or could have been injured in the place where he was situated, except by the extraordinarily hazardous thing that actually occurred, a thing that no one seemed to think or anticipate would occur. It is true that a member of the defendant company testified that the usual method of tearing down these walls was to push them over with two-by-fours or to put a rope around them and pull them over, and counsel for appellants argue from

this that there is no evidence in the case that the work was done in any other way except the ordinary and usual way, and since the ordinary and usual methods were used, namely, pushing the wall over by rocking it, that defendants were not negligent; but when the testimony is considered in its entirety it will bear no such interpretation. Emerson himself testified: ''I didn't think the roof would cave in with the brick falling on it that morning. I talked to Mr. Kenny. I thought probably it would ruin $4 or $5 worth of sheeting. * * * I didn't test the roof of the one story building to see whether it would hold the weight before the falling of this wall. * * * I was guessing that the roof would hold. * * * My attention was called to the fact that a ledge over the window was slightly different construction than the rest of the wall. It was new Portland cement, the rest was an old sand brick wall. * * * If I had known there was anyone in the building below I certainly would not have pushed the wall. I didn't suppose Mr. Crawford was in there when we pushed the wall. He told me he wanted in for just a minute. * * * After I talked about the key I knew Mr. Crawford was going into that building when he left with Mr. Kenny. I never saw him come out. I was not advised by anyone that he had gone out until after he was hurt.''

This wall crashed clear through this roof, taking a large portion of the roof with it. That this was not the usual and ordinary way of tearing down a wall we think is self-evident. The last thing the construction company wanted was to have tons of brick and debris mixed up with the roof of the adjoining building, making it very difficult to remove. While the trial court expressed some doubt on the matter, even so, we think he followed the only course under such circumstances open to him in leaving the question for the determination of the jury under proper instructions.

Neither do we think the remarks of the court made at the time he ruled upon the motion to direct a verdict at the close of plaintiff's evidence, resulting in the withdrawal from the consideration of the jury the first two grounds of negligence, to the effect that under an assumed set of facts which do not exist in this record the plaintiff would be guilty of contributory negligence, became the law of the case as applied to the facts under the issue that was actually submitted to the jury, and upon which the jury based its verdict.

■■■ Appellants also complain of some of the rulings of the court on the admission of testimony bearing upon the question of whethor or not the plaintiff was occupying the premises under an oral lease. We will not extend this opinion by setting out the questions. Suffice it to say that if there was error in the court's ruling, it was clearly without prejudice, because the facts sought to be established were fully proven by other competent testimony, which is not contradicted or disputed in the record.

It necessarily follows that as to the appeal of appellants the case must be affirmed.

We next consider the matter urged by appellee in his appeal from the order of the court reducing the verdict and entering judgment for the lesser amount.

■■■ The established rule in this state is for a trial court, which is of the opinion that a verdict for an excessive amount has been returned, to give the successful party the option to accept judgment for the amount which the court believes to be just or to submit to a new trial. Baxter v. City of Cedar Rapids, 103 Iowa 599, 608, 72 N. W. 790. We have said:

"The effect of such ruling merely shows, in the opinion of the court, that the evidence did not authorize a verdict for so large an amount as that fixed by the jury."

Schmidt v. Mehan, 167 Iowa 236, 239, 149 N. W. 242, 243. The rule that has been adhered to with more or less consistency in this state is stated in Brause v. Brause, 190 Iowa 329, at page 337, 177 N. W. 65, 68, wherein this court said:

"We have said many times that the assessment of damages both actual and exemplary is peculiarly within the discretion of the jury. It is true, of course, as said in some of the cases that this is not unlimited. The test is not what amount the court would have allowed, but whether the verdict is so large or small, as the case may be, as to shock the conscience. In Hall v. Chicago, B. & Q. R. Co., 145 Iowa 291, 122 N. W. 894, cited in Ideal C. S. R. Works v. City of Des Moines, 167 Iowa 517, 522, 149 N. W. 640, we said:

" 'The mere fact that the amount assessed is more or less than the court would have been disposed to allow, were the case submitted without a jury, is not controlling, and will not justify the setting aside of the verdict. To call for such action, the

amount allowed must be so great and excessive, or so small and inadequate, that the just and intelligent mind is forced to the conclusion that the jury has failed to comprehend the case as submitted, or has been influenced to its verdict by passion or prejudice.' ''

These cases were considered in a more recent case of Manders v. Dallam, 215 Iowa 137, 140, 244 N. W. 724, 726, wherein this court again said:

''What is said in the Brause and other cases above cited was called forth upon an occasion where the appellant asked this court to grant a new trial after the district court refused to do so. Consequently, as indicated in the cited cases themselves, the general rule is relaxed in cases where the district court, in the exercise of its discretion, has granted a new trial. This is true because the district court has a broad discretion in granting a new trial. Leake v. Azinger, 214 Iowa 927, 243 N. W. 196; Lange v. Nissen, 204 Iowa 1080, 216 N. W. 697; Jelsma v. English, 210 Iowa 1065, 231 N. W. 304; Thul v. Weiland, 213 Iowa 713, 239 N. W. 515; Rupp v. Kohn, 210 Iowa 969, 232 N. W. 174.

''We are more reluctant to interfere with the granting of a new trial than with the refusal to allow the relief. A trial court is vested with a large discretion in passing upon a motion for a new trial. Unless that discretion is abused, this court will not interfere.'' Citing cases.

The procedure of the trial court in the instant case is not the orthodox procedure. It will be noticed that the trial court, instead of giving the plaintiff the option to accept the lesser amount or take a new trial, found the verdict was excessive and reduced it from $5,500 to $3,500 and said ''with this condition the motion for a new trial is overruled''. Therefore, strictly speaking, the rule just announced that this court will reluctantly interfere with the granting of a new trial would have no application; for a new trial was not granted. Therefore, the matter we are called upon to review is whether the court may, without giving the plaintiff this option, arbitrarily reduce the verdict and at the same time overrule the motion for a new trial and order judgment entered on the reduced amount. This matter was not presented by the argument of appellee. The com-

plaint of appellee, as stated in his argument, is confined to asking this court to reverse or modify that part of the order reducing the verdict and ordering judgment to be entered in the amount of $3,500 with interest from the date of the jury's verdict, and to permit the recovery the jury determined. He makes no complaint that he was not given the opportunity for a new trial. But he does raise the question of the legality of the entry and the power of the court to make the same as heretofore indicated. Under the repeated holdings of our court—and we think there is no exception to this rule—a trial court is powerless to reduce the verdict of the jury in an action for unliquidated damages and render judgment for a less amount, unless the party in whose favor the verdict was rendered consents to the reduction, since a reduction under such circumstances invades the province of the jury, the proper course being to give the plaintiff the option to accept the reduced amount, and if a remittitur is refused, to set aside the verdict and award a new trial. Noel v. Dubuque, B. & M. R. Co., 44 Iowa 293; Brown v. McLeish, 71 Iowa 381, 32 N. W. 385; Hudson v. Applegate & Co., 87 Iowa 605, 54 N. W. 462; Stanley v. Core, 119 Iowa 417, 93 N. W. 343; Barber v. Maden, 126 Iowa 402, 102 N. W. 120; 53 A. L. R. 779.

This court has no desire to unnecessarily hamper the trial court or to forestall the exercise by the trial court of his legal discretion in granting new trials. Therefore, on appellee's appeal the case is reversed and remanded to the district court with instructions to either enter a judgment on the verdict rendered by the jury or permit the plaintiff to elect whether he will take a judgment for $3,500 or a new trial.

Affirmed as to defendants-appellants' appeal. Reversed and remanded with instructions on plaintiff-appellee's appeal.

PARSONS, C. J., and KINTZINGER, MITCHELL, STIGER, and ANDERSON, JJ., concur.