M. A. MANNING, Trustee, Appellee, v. ROBERT BERRY and ——— BERRY, his wife, R. O. BERRY and ——— BERRY, his wife, Appellants.

Gifts *inter vivos*: EVIDENCE. Proof of the execution of an undelivered deed conveying land from a father to his son, which he afterward devised to him for life; that the son was in possession with expressions from the father of intent that he should have the land in a division of the estate; and that he paid taxes on the land out of the rents, but made no valuable improvements nor parted with any consideration, was insufficient to establish a gift *inter vivos.*

*Appeal from Linn District Court.*—HON. B. H. MILLER, Judge.

WEDNESDAY, APRIL 7, 1909.

THIS is an action by plaintiff as trustee in bankruptcy to recover certain eighty acres of land as the alleged property of the bankrupt, R. O. Berry, the legal title to which was held by the defendant Robert Berry. There was a decree for the plaintiff. Defendants appeal.—*Reversed.*

*Chas. W. Bingham,* for appellants.

*Voris & Haas,* for appellee.

EVANS, C. J.—The plaintiff is the trustee in bank-ruptcy in the matter of the estate of R. O. Berry, bank-rupt, who is one of the defendants herein. This action was begun in November, 1905. Defendant Robert Berry was the father of defendant R. O. Berry, known in this record as Orville Berry. The claim of the petition is that about 1891 the defendant Robert Berry made a gift to his son Orville Berry of the eighty acres in question, and that, in pursuance thereof, the said Orville Berry went into possession of the land and obtained the rents and profits thereof, and paid taxes and built improvements thereon, but that the father always retained the legal title in himself. Paragraphs 6, 7 and 8 of the petition are as follows:

Par. 6. That some time about the year A. D. 1891, the exact date this plaintiff is not able to give more defi-nitely at this time, as an advancement on the distributive share of the said son, this defendant R. O. Berry, in and to the estate of his said father, the defendant Robert Berry, the said Robert Berry gave and advanced to the defendant R. O. Berry all of the above-described lands, and pursuant to the said advancement, and to make the same effective and irrevocable, at the said time, to wit, about the year A. D. 1891, the said defendants Robert Berry and his said wife turned over to the defendant R. O. Berry the full, unreserved, and undisputed possession of all of the said lands as his own, with the full and un-qualified right to use, occupy and enjoy the same as his sole property, but, in order to prevent a sale or incum-brance of or upon the said lands by the said R. O. Berry during the lifetime of his said father, the said Robert Berry retained and held the legal title to said lands in his own name in trust for the said defendant R. O. Berry.

Par. 7. That, pursuant to the said advancement to

the said R. O. Berry of the said lands, the said R. O. Berry took immediate and full possession of the said lands, and the whole thereof, and made valuable and permanent improvements thereon, constructed and erected permanent buildings on the same, built and maintained permanent fences, paid all the regular State and county taxes levied and assessed on and against the said lands, and used and enjoyed the entire income, rents and profits thereof, and in every respect used, occupied and enjoyed the said lands as his own.

Par. 8.　That to further carry out the said plan of advancement, and to make the same effective in every respect, and to protect the rights of the said R. O. Berry in and to said lands as against the said defendants Robert Berry and wife, and also as against the other children and heirs at law of the said Robert Berry and wife, and to fully establish and confirm the right and title to all said lands in him, the said R. O. Berry, the said defendants Robert Berry and wife made and executed to the said R. O. Berry a deed to all said lands, duly signed and acknowledged, and delivered the same to the said R. O. Berry, by placing the same in the hands of a third party to be held for the said R. O. Berry, and to be delivered to him upon the death of his said father Robert Berry.

To this petition the defendants filed a joint answer, which specially denied all the allegations of these paragraphs. Pending the litigation, and in July, 1906, Robert Berry, the father, died, and his executors have been substituted.

This case involves a fact question only. Robert Berry in his lifetime owned upwards of 1,300 acres of land. He had seven children. During his lifetime he designated to all of his children just what land he wanted each one to have after his death. He gave to each one of them as soon as married the use of such land so designated. The eighty acres in question was designated by him for his son Orville, and he tried to induce him to live upon it and farm it and improve it, but with only partial success. The testimony on behalf of the plaintiff in support of his

petition consists largely of oral statements made by the
father to the effect that he had given this land to Orville,
and similar statements as to other lands for other children.
The following excerpt from the testimony of G. L. Sny-
der, one of plaintiff's witnesses, is illustrative of the gen-
eral character of the testimony:

I think I asked him what was Orville's object in leav-
ing the farm, and he said he had become dissatisfied. He
didn't know why, and that he was making the sale now,
and he was going to let him go. He said he could stay
for five years, and, when the five years were up, he could
come back if he wanted to. He then went on to tell me
he had given Orville the farm, and he could make every-
thing off of it as much as he possibly could, and all he
asked was for him to keep up the improvements and pay
the taxes, and when he was through it belonged to Orville.
. . . I remember distinctly he said that all he asked
of Orville was to keep up the farm and pay the taxes,
and everything he made, of course, was his. He stated
he gave Orville the farm, and he held the title, of course,
as long as he lived, but, when he was gone, the farm be-
longed to Orville. When he was gone, Orville would get
the title.

There are many witnesses who testify to substan-
tially similar conversations. There is no question under
the evidence but that the father intended that his son
should ultimately have that particular piece of land. But
the evidence fails to satisfy us that the father ever in-
tended or consented to lose his ownership or dominion
over the land during his lifetime. The allegation of para-
graph 8 that the father had executed a deed and deposited
it with a third person is not proven, nor is there any
evidence to that effect. There is the testimony of one wit-
ness, Snyder, who testifies that in 1890 the father showed
him an envelope of papers which he stated consisted of
deeds executed by him to his children, but there is no evi-
dence of any delivery to a third person. Nor do we think

that the evidence of Snyder can be accepted as sufficient to prove that deeds were even executed by the father at that time. The father died testate. He left a will leaving to each one of his children a life estate in land of substantially equal value, namely, $12,000, with the remainder over to the children of each. His will bore date April 22, 1905. On the same day he executed deeds to each of his children for the recited consideration of $1, and in conformity with the provisions of the will, conveying to each of them a life estate in the lands devised, and remainder over to their children. His wife who survives him as widow joined in those deeds. She never did sign any deed at any previous date of any land to any of the children. The deeds were not delivered in his lifetime. The lands included in the devise and deed to Orville Berry amount to two hundred acres, including the eighty acres in question.

The only question for our consideration under this evidence is: Was there a completed gift of the eighty acres in question to Orville Berry by the father during his lifetime? This is not an action of specific performance brought by the son against the father or against his estate, based upon a consideration or upon the performance of conditions imposed. The plaintiff's case is bottomed upon the proposition that the land in question became the absolute property of the debtor defendant by completed gift during the lifetime of the father. The plaintiff is confronted by the denial of both parties to the alleged contract that the gift ever was consummated, although it is conceded that the gift was always intended *in futuro*. No fraud is alleged, nor is there any basis in the evidence for a charge of fraud. The evidence is quite voluminous, and we can not discuss it in detail. We are satisfied that the material allegations of plaintiff's petition are not fairly established. All the talk and conduct of father and son with reference to this land are consistent with the intent

of the father that the son should take this land in the divi-. sion of his estate. Neither the existence of that intention nor the free disclosure of it on his part was in any wise inconsistent with his purpose to maintain his dominion over all his property while he lived. No one was wronged by his conduct. He had a legal right to so dispose of his property that none of it should be available to the creditors of his son if he had chosen so to do. He did not, however, attempt any discrimination in that respect. He made precisely equal provision for all his children in his will and the deeds accompanying the same. If upon the faith of the proposed gift Orville had parted with consideration, or had built valuable improvements, a different question would be presented. What the effect of such a state of facts would be upon the rights of the parties we have no occasion to determine. The record does not show that he built any improvements to any substantial extent. He paid the taxes, but this was done out of the rents and profits. The trial court found and decreed that the defendant R. O. Berry had been the absolute owner of the eighty acres in question since the year 1890, and awarded the same to the plaintiff as trustee in bankruptcy. What we have already said concerning the evidence indicates our view that the finding of the trial court can not be sustained. It is our conclusion that the legal title and the ownership remained in Robert Berry up to the time of his death. For cases in point, see *Oliver v. Perry,* 131 Iowa, 654; *Truman v. Truman,* 79 Iowa, 506.

The decree entered below must accordingly be *reversed.*