In the Matter of the Estate of William Bremer, Deceased,
W. E. BREMER, Appellant, v. G. J. HAAG, Executor
of said Estate, Appellee.

**Estates of decedents:** CLAIMS: BREACH OF AGREEMENT TO DEVISE: EVI-
DENCE. In this action by a son against the estate of his father
to enforce an alleged agreement to give the son certain lands on
condition that he continue to reside in the town with his father
so long as he lived, the testimony of the only witness present at
the conversation in which the agreement is alleged to have been
made, and in support of the agreement, though not susceptible of
direct contradiction is not conclusive on the subject, but must be
considered in the light of all the circumstances. And upon the
whole evidence it is held that the claimed agreement is not es-
tablished.

**Gifts:** EVIDENCE: DECLARATIONS OF INTENT. The fact that a parent
may have declared his intention to give certain property to a child,
still his estate is not bound by such declarations, where the parent
retained possession and control of the property.

**Trial:** ADMISSION OF EVIDENCE: RESERVATION OF RULING: OBJECTION ON
APPEAL. Where all the evidence offered in an action tried to the
court is admitted and rulings on objections thereto are reserved un-
til counsel present their authorities, without objection to that form
of procedure, the parties are in no position to complain thereof
on appeal.

**Evidence:** STATEMENTS OF DECEDENT: SELF-SERVING DECLARATIONS. In
this action by a son against his father's estate for breach of con-
tract to convey land, an inquiry of a witness as to whether the
father ever said anything to the son about letting him have cer-
tain property for a certain price, did not call for evidence either
inadmissible as a declaration of decedent, or as a self-serving
declaration; since it had relation to a conversation involving state-
ments of both parties.

**Same:** MATERIALITY OF EVIDENCE. Evidence that the father, who be-
fore his death conveyed the property to another, was incompetent
to make the conveyance because of indulgence in intoxicating
liquors was not material, where the son was not assailing the
validity of the conveyance.

VOL. 151 IA.—29.

*Appeal from Bremer District Court.*—HON. J. J. CLARK, Judge.

WEDNESDAY, JUNE 7, 1911.

THE defendant is the executor of the estate of William Bremer. The plaintiff filed a claim against the estate for damages in the sum of $8,000 for breach of an alleged contract. The defendant, executor, disapproved the claim, and the same was brought on for trial. The trial was had before the court without a jury. The plaintiff's claim was dismissed at his cost and he has appealed. *Affirmed.*

*Dawson & Wehrmacher,* for appellant.

*Hagemann & Farwell,* for appellee.

EVANS, J.—William Bremer died in June, 1908. His wife died in 1905. The plaintiff was their adopted son and was their only heir at law. The decedent left a will which was duly probated, and which distributed his estate among many different beneficiaries, of which the plaintiff was one. The plaintiff's claim is that in 1904 the decedent promised to give him a certain farm of two hundred and forty acres, located in Minnesota, on condition that he should continue to reside in the town of Sumner as long as his foster father should live. At the time of this alleged agreement the plaintiff owned and occupied a home in Sumner and had been a resident therein for some years. It is claimed, however, that he was proposing to move to Minnesota and to occupy the farm in question, and that this was the occasion of the agreement. The answer of the executor denies such agreement, and pleads its invalidity in various forms, which can be noticed later.

I.   The principal point urged upon us by the appel-
lant is that the alleged agreement was established by un-

**1. ESTATES OF DECEDENTS: claims: breach of agreement to devise: evidence.** disputed testimony, and that the finding of the trial court is contrary to the evidence. The only witness who testified directly to the alleged agreement was the wife of the
plaintiff.   Her direct evidence was as follows:

William Bremer, deceased, was the owner of some
land in Minnesota in the year 1904.   He owned two hun-
dred and forty acres in Grant county, Minnesota, near the
town of Herman.   Remember a conversation that William
Bremer, deceased, had with my husband in the fall of
1904, with reference to some Minnesota land.  · I took no
part in that conversation.   He said he should stay here
as long as we lived—as they lived here, and then after
their death then he could do with the farm just as he
pleased, but he should stay here as long as they lived, and
he promised him to stay here.   Did not take any part in
this conversation.   Q. State who you mean by 'he.'   A.
Well, my husband should stay here as long as his father
and mother lives, he should stay here; and after their
death why he could do as he pleased; and he promised
them to stay here ·as long as they lived, and he stayed.
Mr. Bremer, deceased, said that to my husband.   Q. And
then what did your husband say in response to that?   A.
He said: 'All right.   I stay here as long as you live.'
That conversation was had in Sumner.   In our place that
he should stay.   I heard a conversation between my hus-
band and William Bremer, deceased, about my husband
going to leave Sumner at that time.   Q. Now, you may
state what was said with reference to that subject.   A.
Well, he was going to go on a farm, and he said he was
going to live on a farm, and father said, 'No, you won't
go.   You stay here as long as we live, and after our death
you can do as you please;' and he promised them to stay.
Q. When you say 'he,' who was that that promised that?
A. My husband promised him to stay.   William Bremer,
deceased, and his wife at that time were about 72 years
of age.   My husband was the only son.   William Bremer, ·
deceased, had no other children.   My husband and I lived
in Sumner until after the death of William Bremer and

his wife. Q. Did you hear anything in that conversation in which you took no part wherein anything was said about this Minnesota land? A. Well, for the present they talked that he was going away and talked the matters over, and then he did not want to leave him—to have him go—that is, W. E. Bremer. Q. Instead of saying 'he' just mention the name of the party that spoke. A. That W. E. Bremer was going to live on a Minnesota farm and Mr. William Bremer did not want to leave him go on the farm. Q. And then what did he say? A. He should stay here—W. E. Bremer should stay here as long as they lived; and after their death why then he could do just as he pleased—the farm be his. Q. What farm were they talking about? A. The Minnesota farm.

We are not prepared to concede that this evidence disclosed sufficient facts to constitute a binding and valid contract. Passing that question, however, it is sufficient to say that the evidence at best is meager and not persuasive in its circumstances. Some corroborating evidence was introduced. Such corroboration consists of some admissions of the elder Bremer to the effect that the farm was his son's and that he was going to give it to him. It is urged that the testimony of the wife was uncontradicted and that the court was bound therefore to accept it as true. This contention can not be sustained. The alleged conversation to which she testified had no other witness than herself. In the nature of the case, therefore, it could not be, contradicted by direct denial. It was the duty of the court nevertheless to scan it carefully and to weigh it in the light of all the circumstances appearing in evidence. This point is discussed at some length in Holmes v. Connable, 111 Iowa, 299, and we need not add to such discussion. Weighing this testimony in the light of all the circumstances appearing in evidence, we think the trial court was justified in finding that the plaintiff's claim was not proved. The after conduct of both father and son was not consistent with any claim of own-

ership of such farm on the part of the son. And this seems to have been the controlling consideration with the trial court in rejecting plaintiff's claim. It appears in evidence that the father and son had been in partnership in the implement business. This business was traded for the land in question. The title was taken in the name of the father. There is some suggestion in the testimony that this was done because it was his money that was invested in the implement business. At least, there is no claim made by the plaintiff that the title was held in trust for the firm. In September, 1907, the father and son had a settlement of the partnership business whereby the son signed a written acknowledgment of "full settlement of said firm" and that "I have no claim or demand of any of the assets of said firm nor as to any of the property at the time of settlement and dissolution of said firm nor as to any of the property after the dissolution of said firm arising out of said business and sale of said firm's property."

The farm in question was incumbered by a mortgage for $3,500. It appears from the testimony on both sides that in October, 1907, the father offered to sell the farm to the son for the amount of the mortgage, but insisted that the mortgage be paid off rather than assumed. It is undisputed that the plaintiff attempted to negotiate a new loan upon the farm for the purpose of extinguishing the existing mortgage, but failed in his efforts. There was sufficient evidence to warrant the trial court in finding that the plaintiff made no claim of right in himself to such farm during such negotiation. In this respect the case is not unlike *Carter v. Nicol,* 116 Iowa, 517. In April, 1908, the father sold said farm to another for the amount of the incumbrance thereon. It does not appear, however, whether the plaintiff knew of such sale. If he did not, such circumstances could, of course, have no significance against him.

2. GIFTS: evidence: declarations of intent.

The fact, if it be a fact, that the father may have declared his intention to give the farm to the son, or that he said he was going to give all his property to the son, is not a controlling circumstance. Such declarations are entirely consistent with the absence or nonexistence of any binding contract to carry out any such declared intention. Parents frequently declare their plans in such respect, but they are not bound thereby to carry out such plans. Notwithstanding such declarations they retain dominion of their property and have a right to dispose of it as they finally will. See *Manning v. Berry,* 142 Iowa, 47. We think the trial court was justified in dismissing the plaintiff's claim for want of adequate proof. Our conclusion in this respect renders it unnecessary to determine the question of consideration or of the statute of frauds.

II. In the course of the trial the trial court reserved its rulings upon certain objections and received the evidence in each such case subject to the objection.

3. TRIAL: admission of evidence: reservation of rulings: objection on appeal.

Appellant now urges upon us that the method was unfair and unwarranted. The rulings of the court were announced at a later stage of the trial. They related to questions upon which the parties desired to be heard and upon which they desired to cite authorities. The method so adopted by the court was not objected to at the time of the trial. On the contrary, it was clearly acquiesced in by counsel on both sides as is indicated by the following colloquy between court and counsel: "Mr. Farwell (defendant's counsel): I would like, briefly, to call the court's attention to two or three cases and the reasoning that makes them applicable. The Court: I thought about this matter that as long as there are jury cases to follow this, unless it inconveniences counsel to change, I would prefer to reserve the rulings if you want to be heard on it, until the close of the evidence. Mr. Dawson (plaintiff's counsel): That suggestion has been

made with other evidence and we have not our authorities here at hand. We supposed that questions would probably be considered by the court when the case was finally sub-. mitted. The Court: I think, perhaps, it will be better all around to do that all around. You can arrange your authorities then. The only thing is not to get the record where we will omit something." We think, therefore, that the appellant is in no position to complain in that regard.

III.    The witness Frederika Karsten, a niece of the deceased, testified to an alleged conversation between the deceased and the plaintiff. The following question was put to her: "Did you ever hear your uncle say anything to Will about letting him have the land for $3,500, the amount of the mortgage?" The plaintiff objected to this question because incompetent as the declaration of a deceased person and as a self-serving declaration. This objection was overruled, and appellant complains of the ruling. The inquiry did not call for a self-serving. declaration. It directed attention to a supposed conversation between plaintiff and his father. Such conversation necessarily involved the statements of both parties thereto and was not incompetent on either ground urged.

*4. EVIDENCE: statements of a decedent: self-serving declarations.*

IV.    The appellant offered to prove by the witness Kratz that he had visited the decedent in February, 1908, and had seen intoxicating liquor in his room, and had seen him drink the same, and had seen him under the influence thereof. This evidence was ruled out as immaterial, and complaint is made of such ruling. The only ground of materiality of such evidence that is now urged upon our attention by the appellant is that the decedent conveyed away the Minnesota farm in February, 1908, and that this testimony would throw some light upon his mental competency to engage in such transaction. The testimony is undisputed

*5. SAME: materiality of evidence.*

that the conveyance was made not in February, but in April, 1908. Were the fact otherwise as to the date of such conveyance, we do not see how the evidence could be deemed material. The plaintiff was not assailing the conveyance. He alleged such conveyance as one of the necessary elements in his case. He pleaded such conveyance as an alleged breach of the contract made with himself. The validity of the conveyance was not put in issue in any manner by either party. There was no error at this point.

The judgment of the trial court must be *affirmed*.