JOE GLASSMAN, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY, Appellant.

Appeal: REVIEW OF QUESTIONS NOT URGED BELOW. A party cannot on
1   appeal rely upon some ground not presented in the trial court, either by pleading or motion for verdict, or by requested instruction. Thus a terminal carrier of goods cannot raise the question of its liability

to be sued under the provisions of the Interstate Commerce Act and amendments thereto for the first time on appeal.

**Evidence:** SCOPE OF CROSS-EXAMINATION. Cross-examination on relevant matter within the direct examination is an absolute right, denial of which is generally sufficient grounds for reversal. Thus where a shipper of apples in a suit against a carrier for damages, testified that he sold the same to customers at a certain price, while if they had not been damaged they would have been worth a greater price, refusal to permit his cross-examination for the purpose of disclosing the purchasers that they might have been brought in and examined as to the condition of the apples was prejudicial error.

**Same.** The discretion of the trial court in determining the scope of cross-examination can only be exercised after that right has been substantially and fairly exhausted.

**Sales:** EVIDENCE: SCOPE OF CROSS-EXAMINATION. A witness who has testified in chief to a sale of property may be cross-examined as to all matters pertaining to the transaction; such as the contract, mode and manner of making, the sale, the consideration, the person to whom paid, the manner of payment and the acts of ownership by the parties.

**Same.** Where a witness testified in chief that he kept track of sales of certain property and that he received a certain sum, and on cross-examination stated that he kept a book account which was made up daily and that the book was in court, refusal to permit his further examination as to whether the entries were made by himself personally or by others was erroneous.

**Railroads:** TRANSPORTATION OF FREIGHT: PRESUMPTION: INTERSTATE COMMERCE ACT: EFFECT. Where a shipper of perishable property examined the same while in transit and in possession of the initial carrier and found it to be in good condition, the presumption obtains that it was still in good condition when delivered to a terminal carrier; and this presumption is not affected by the provisions of the Interstate Commerce Act and amendments thereto, making the initial carrier liable for injury to a shipment of property, in an action for damages against a terminal carrier.

**Same:** EVIDENCE: ADMISSION OF PLEADINGS. Where a shipper claimed in his original petition a certain sum as damages to the shipment while in transit, and in an amended petition he claimed a larger sum, explaining the ground of his different demands in his testimony, there was no prejudicial error in refusing admission of the

pleadings in evidence; besides the pleadings were not admissible as a whole for the purpose of showing a difference in his claims. '

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

FRIDAY, JUNE 19, 1914.

ACTION to recover for a car of apples alleged to have been damaged by freezing while in defendant's care, and because of its negligence. Trial to a jury. Verdict and judgment for plaintiff for $297.48. Defendant appeals.—*Reversed.*

*Ranck & Messer, F. W. Sargent, Robert J. Bannister,* and *J. H. Johnson,* for appellant.

*Edwin B. Wilson* and *W. R. Hart,* for appellee.

PRESTON, J.—Plaintiff claims that on or about the 29th day of November, 1910, he delivered to the Atchison, Topeka & Santa Fe Railway Company, a connecting carrier of defendant, at Hutchinson, Kan., a car load of apples to be delivered to him at Iowa City. Plaintiff, Shulman, and one Saltzman each claimed to be the owner of one-third of the apples. The other two assigned their claims to plaintiff, and were to divide the proceeds of the recovery from defendant. They claim that when said car load of apples was delivered to the said Santa Fe Railway they were in good condition, and that when delivered at Iowa City the apples were unfit for sale as first-class apples because they had been chilled and frozen; that said chilling and freezing was caused by the negligence of defendant in not properly caring for said apples and using the necessary precaution in handling and shipping the same while under its control; that if the apples had been in good condition they would have been worth at Iowa City $655, but in the condition that they were delivered they were worth

only $352.52. Plaintiff asks judgment for $302.48. Defendant answered that about December 3d the Santa Fe Railway Company delivered to it at Kansas City, Mo., a car load of apples to be transported and delivered to plaintiff at Iowa City; that defendant did transport said apples from Kansas City, Mo., and did deliver the same to the plaintiff within a reasonable time, and in the same condition that they were delivered to it in Kansas City; denies all other allegations. Plaintiff's theory was that defendant did not take proper care of the car; that the hatches and ventilators were left open after the car came into defendant's possession, and the apples were thereby frozen. Plaintiff testified that he saw and examined the apples at Hutchinson, and that they were all right and not frozen. There was evidence tending to show that the ventilators of the car were opened by the defendant at Kansas City, and on that day the temperature fell to 25 degrees above zero, and was considerably colder than that during the time the shipment was moving from there to Iowa City, and at one time as low as 8 above zero, or 24 degrees below freezing. There is no definite showing as to when the ventilators were closed. The evidence for defendant tended to show that the ventilators were closed the entire distance from Kansas City to Iowa City. It is claimed by the plaintiff that the apples could have been frozen and damaged at the time the shipment left Kansas City, while the ventilators were open. The car arrived at Iowa City some time towards evening of December 6th, and was set on the side track the night of December 6th. On the morning of December 7th, plaintiff opened the car, in the presence of the agent of defendant, and one or two others; plaintiff claims that at that time they were found to be frozen around the door and more or less frozen through the car. The theory of the defendant was that the car was a refrigerator car, and from its construction, being lined and padded with hair or felt, and from the condition of the weather, as shown, the apples could not have been frozen after they came into its possession, and also claimed

that they· were frozen, if at all, after they were set out on the side track at Iowa City, and while plaintiff was unloading them. Plaintiff was a day and a half unloading the car. The thermometer was three degrees above zero on the morning of December 7th. Plaintiff testifies that the night of the 7th they put an oil stove in the car and covered the remaining apples with blankets. The court instructed the jury that the defendant would not be liable for any damage to the apples after the same were placed on the side track at Iowa City for the purpose of unloading.

Without setting out the evidence more fully, we think it was a question for the jury as to whether the apples were damaged after they came into the possession of this defendant and before the car was placed on the team track. Twenty errors have been assigned, but· they have not all been argued. Those argued relate to the sufficiency of the evidence and to the action of the court in restricting the defendant in its cross-examination of some of the witnesses, and other rulings on evidence, also as to one of the instructions.

I. Appellant has also argued the question as to whether, under the Interstate Commerce Act, and the so-called Carmack amendment thereto, defendant may be sued, it being the terminal carrier. This question we think is not properly raised. There is no pleading covering the point, and this matter was not included in the motion to direct a verdict, nor was there any instruction asked on the subject. The Carmack amendment makes the initial carrier liable. The plaintiff cites two authorities which hold that the right of action against the initial carrier is not exclusive. Those cases are: *Tradewell v. C. & N. W. Ry. Co.,* 150 Wis. 259 (136 N. W. 794) ; *Uber v. C., M. & St. P. Ry. Co.,* 151 Wis. 431 (138 N. W. 57).

1. APPEAL : review of questions not urged below.

In *Adams Express Co. v. Croninger,* 226 U. S. 491 (33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.), in referring to sections 20 and 22 of the act, the court said:

It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in the twentieth section, that it was evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act.

But, as we think the question is not properly raised in this case, we ought not to now determine it. We think the only question which can be considered in this case with reference to the Interstate Commerce Act is the point as to whether a presumption obtains that the apples were in good condition when delivered to defendant, if it is shown they were in such condition en route or when delivered to the initial carrier. In instruction No. 6 the court instructed in reference to this matter, and it will be referred to later in the opinion.

II. Appellant complains that it was unduly restricted in its cross-examination of the three interested parties, plaintiff, Shulman, and Saltzman. Plaintiff testified that he sold about one hundred and fifty or one hundred and sixty bushels of the apples, and that the other two sold about the same; the apples were sold in two or three barrel lots, to customers in the city; the other two testified that they accounted for the proceeds to the plaintiff; that they sold at fifty cents, sixty cents, and seventy cents per bushel. The testimony of these three was substantially all the evidence in the case on this subject. This testimony was peculiarly within the knowledge of these witnesses, and defendant had no means of ascertaining the names of the parties to whom they were sold except by these witnesses. The defendant was entirely in the dark as to these matters. Had it been permitted to inquire, for instance, as to the persons buying the apples, it could have summoned such persons as witnesses to see what they would say as to the quality of the

2. EVIDENCE: scope of cross-examination.

apples and the price paid. These matters had been referred
to in direct examination, and defendant was entitled to go
into the details on cross-examination. On cross-examination,
defendant sought to go into the details and show the names of
the parties to whom it was claimed such sales had been made,
and to show how many of the apples were sold at fifty cents
per bushel, and how many at sixty cents and seventy cents.
Plaintiff testified that the apples would have been worth $1.25
per bushel if they had not been frozen. The court sustained
objections to all such questions asked upon cross-examination.
We think it was material and pertinent on the question of
damages, and whether the apples sold by them were, in fact,
sold for a less price because the apples were of inferior quality.
The evidence for defendant tended to show that the apples
were not frozen or damaged. One of the witnesses testified
that he was present when the car was opened on December
7th, examined the apples, and ate some of them. The de-
fendant claims that plaintiff's claim is a fraudulent one. We
express no opinion, of course. In view of a new trial, we
ought not to say more than that, in our opinion, the court
erred in sustaining the objection to this line of cross-examina-
tion, and that the error was prejudicial. Refusal to allow
cross-examination on relevant matters covered by the examina-
tion in chief is a denial of an absolute right, and has been
generally held to be sufficient ground for reversal. It is
usual, under such circumstances, to allow considerable latitude
of interested witnesses, and this is the rule also where fraud
is charged.

It is true, of course, that the trial court has a discretion
in such matters, but it has been said in some of the cases that it
is only after the right of cross-examination has been substan-
tially and fairly exercised that its allowance
becomes discretionary, although it has been
said in other cases that when the object of the cross-examina-
tion is to ascertain the credibility and accuracy of a witness,
its method and duration are subject to judicial discretion.

3. SAME.

A witness who testifies as to a sale or conveyance may be cross-examined as to the mode and manner of making the sale, the consideration therefor, the person to whom the considera-

4. SALES: evi-
dence: scope of
cross-examina-
tion.

tion was paid, the manner of payment, the contract under which the sale was made, acts of ownership by the parties, and other matters which may be pertinent to the transaction. 40 Cyc. 2498, and cases.

We think that the trial court also unduly restricted the cross-examination of plaintiff as to his books. He testified in chief that he kept track of the net proceeds that he received

5. SAME.

from the apples sold, and that he received $352.52. On cross-examination, he testified that he kept a book account, and that it was in a book there in court, and that it was made up every night when they would check up. He was then asked on cross-examination:

Q. In what manner did you keep a record of the sales? Q. This book you spoke of, was it written down by you personally, or did the other boys put down something? Q. In what manner did you keep the book?

The court sustained objection to all these questions. The questions were proper, and the objections should have been overruled.

III. In instruction No. 6, the court stated to the jury, in substance, that where apples are delivered to one carrier to be by that carrier delivered to another for shipment, and it

6. RAILROADS:
transportation
of freight: pre-
sumption: In-
terstate Com-
merce Act: ef-
fect.

is shown that they were in good condition when delivered to the first carrier, the presumption is that they were in good condition when received by the second carrier, and that if the plaintiff had shown that the apples in controversy were in good condition when delivered to the Santa Fe Railway Company at Hutchinson, Kan., the presumption would be that they were in good condition when delivered to the defendant in this action, and this presumption

could only be overcome by defendant's showing by a preponderance of the evidence that they were not. The instruction is not strictly accurate as applied to the evidence. The apples were delivered to the Santa Fe Railway in Colorado. At Hutchinson, Kan., the car was, at plaintiff's request, diverted and sent to Iowa City. As we understand the record, there is no evidence as to the condition of the apples when they were delivered to the Santa Fe in Colorado. Plaintiff claims that the examination of the apples by him was at Hutchinson, Kan., while they were en route. They had already safely passed over several hundred miles, from Colorado to Hutchinson. If they were in good condition at Hutchinson, the presumption would be strengthened that they were in good condition when received by defendant. The same presumption obtains where the property is shown to be in good condition at a certain point in transit. *Powers v. C., R. I. & P. Ry. Co.,* 130 Iowa, 615. But the defendant could not be prejudiced by this inaccuracy in the instruction. In fact, no complaint is made of this feature of the instruction. The car was shipped from Colorado November 25th. Plaintiff testifies that he saw and purchased the apples at Hutchinson, Kan., November 29th. They were delivered to the defendant at Kansas City December 3d. No new bill of lading was delivered to the plaintiff at Hutchinson. There is no evidence in the record as to the condition of the weather prior to the time the car was delivered to the defendant at Kansas City. It is conceded that it has been the holding of this court, and, with one or two exceptions, of other courts of the different states, that such presumption obtains. *Beard v. Railway,* 79 Iowa, 518; *Powers v. Railway,* 130 Iowa, 615; *Stone v. Railway,* 149 Iowa, 240; Hammon on Evidence, 293. And cases in note to *Atlantic Coast Line R. R. v. Riverside Mills,* 31 L. R. A. (N. S.) 7, at page 102. The reason for the rule is stated in *Smith v. N. Y. C. & H. R. R. Co.,* 43 Barb. (N. Y.) 225, also referred to at page 103 of the note to 31 L. R. A. (N. S.) above referred to.

But it is contended by defendant, and that is the only

point made by it in this case, that this presumption is superseded by the Interstate Commerce Act and the Carmack amendment thereto.    Counsel cites *Carlton Produce Co. v. Railway* (Tex. Civ. App.) 131 S. W. 1187, where the court, in speaking of that act, said:

Presumptions indulged in by courts prior to the enactment of that act in regard to the final carrier have no bearing or effect upon cases arising under that act.    Those presumptions have been effectually destroyed by the declaration that the initial carrier in interstate shipments is liable no matter on what line the damage may have occurred.

But that case, unlike this, was a suit against the initial carrier, and the Carmack amendment expressly makes the initial carrier liable.    There was not in that case any question as to the presumption as to the condition of goods when received by the terminal carrier.    Appellant also cites *Swetland v. R. R. Co.*, 102 Mass. 276.    This case was referred to in *Moore v. N. Y., etc., R. R. Co.*, 173 Mass. 335 (53 N. E. 816, 73 Am. St. Rep. 298), wherein it was pointed out that the presumption was not mentioned.    *Lefebure v. American Express*, 160 Iowa, 54, does not bear upon the point we are now considering as to the presumption.    In that case the opinion, using some of the language of a decision of the Supreme Court of the United States, states that under the Interstate Commerce Act, as amended:

All state regulations and decisions relative to the liability of carriers upon interstate shipments have been superseded, and that there is now one national law upon the subject, which must govern; and, in applying the act to such limited liability contracts as the one upon which defendant relies, that there is nothing in the aforesaid amendments which in any way prohibits the making of such contracts, and nothing in public policy forbidding them.

This case and the case of *Express Co. v. Croninger, supra*, seem to hold that state laws are not superseded unless incon-

sistent with the federal act. We fail to see anything in the federal act affecting the question of the presumption we are now considering. In South Carolina they have a state statute similar in some respects to the Carmack amendment to the Interstate Commerce Act. It makes the initial carrier liable in every case for loss or damage to goods unless it discharges its liability by the production of a written receipt from the next carrier to which it properly delivered the goods. Under such a statute, it was held that the presumption against a terminal carrier delivering a shipment in damaged condition is not affected by the statute. *Willett v. Southern R. Co.,* 66 S. C. 477 (45 S. E. 93). That case is not precisely in point, perhaps, but it has a bearing as tending to show that the mere fact that the initial carrier is made liable does not affect the presumption as to the condition of property when delivered to a connecting carrier. We are of opinion that there was no error in this instruction.

IV. In the original petition plaintiff asked damages in the sum of $171.89 only. A number of amendments to the petition were filed, one of which is denominated amended and substituted petition, in which plaintiff claimed $302.48. In connection with the testimony of the plaintiff, defendant offered in evidence the original and amended and substituted petition filed in the case, and plaintiff's objection thereto was sustained. The only purpose of this offer, as we understand it, was to show that he had claimed a smaller amount in the original petition, but plaintiff was asked upon cross-examination in regard to this matter, and admitted in his testimony all that could possibly be claimed for the difference in the pleadings. Furthermore, the offer was too general. The entire pleadings were not admissible for this purpose; and, still further, if the so-called amended or substituted petition claiming the larger amount, be treated as an amendment only, the original was not superseded, and was still a part of the record. But we need not

7. SAME: evidence: admission of pleadings.

consider this matter further.   We think there was no error in sustaining the objection under the circumstances shown.

All points argued have been considered.   For the error pointed out in the opinion, the judgment is reversed, and the case is remanded for a new trial.

LADD, C. J., and EVANS and WEAVER, JJ., concurring.