A. E. SCHULTE, Appellee, v. IDEAL FOOD PRODUCTS COMPANY, Appellant.

**TRIAL:** Direction of Verdict—Erroneous Direction on Positive Testi-
1 mony. A jury question is presented on the issue whether an oral
contract was entered into, when the record reveals: (1) *Positive* testi-
mony that it was entered into; (2) *no direct* testimony that it was *not*
entered into; but (3) *collateral circumstances* justifying the inference
that it was *not* entered into. Especially is this true when from the
very nature of the transaction no direct contradictory testimony is
available to the party who denies the contract. (See Book of Anno.,
Vol. 1, Sec. 11508, Anno. 102 *et seq.*)

**APPEAL AND ERROR:** Harmless Error—Nonexplanatory Questions—
2 Nonapplicability of Rule. The rule that the exclusion of questions
which in no manner indicate the prospective answer is presumptively
without prejudice has little, if any, application to the *cross-examination*
of a witness. (See Book of Anno., Vol. 1, Sec. 11548, Anno. 19 *et
seq.*)

Headnote 1: 38 Cyc. pp. 1569, 1575, 1576. Headnote 2: 3 C. J. p.
827; 4 C. J. pp. 914, 1003.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

APRIL 5, 1927.

Action at law for $3,499.44 as balance of compensation due
upon an express oral contract of employment entered into be-
tween the defendant and plaintiff. The defense was, in sub-
stance, a general denial and a plea of discharge of the plaintiff
for a good cause. At the close of the evidence, the trial court
directed a verdict for the plaintiff for the full amount claimed.
The defendant has appealed.—*Reversed.*

*L. D. Dennis,* for appellant.

*Johnson, Donnelly & Lynch* and *E. C. Barber,* for appellee.

EVANS, C. J.—The contract sued upon was made, if at all,
in January, 1923. The defendant was a going corporation, which
had been in business in Cedar Rapids for several years. The

**1. TRIAL: direction of verdict: erroneous direction on positive testimony.**
contract alleged to have been made with plaintiff was so made between him and one Bennett, on behalf of the corporation. Bennett was used as a witness by the plaintiff. Both Bennett and plaintiff testified to the terms of the contract. These were, in substance, that the plaintiff should receive as his compensation for the year 1923 a sum equal to 3 per cent of the gross business to be transacted in that year. Such gross business amounted to approximately $250,000. The amount of compensation claimed amounted approximately to $7,500. There were no witnesses to the contract other than plaintiff and Bennett. No record had ever been made of such contract, nor had it ever been reported to the defendant's board of directors. No direct evidence was available to the defendant to contradict the testimony of the plaintiff and Bennett as to the making of such contract. The defendant relied wholly upon evidence of circumstances which tended to show that the contract was unreasonable and improbable, and tended otherwise to impair or impeach the credibility of the testimony of the plaintiff and his witness. Some of the facts and circumstances thus relied on are undisputed in the record; others were elicited upon cross-examination of plaintiff; and others were sought to be thus elicited, but were rejected by the rulings of the court. Still other circumstances were sought to be shown by independent evidence, but were rejected by the rulings of the court. Though a large number of errors are assigned, the major question presented upon this record is whether the court properly directed a verdict for the plaintiff for the full amount of his claim, on the ground that the positive evidence of the plaintiff and his witness was uncontradicted by any direct evidence. In view of the necessity of awarding a new trial, we shall avoid, as far as possible, an undue discussion of the details of the evidence, and devote our consideration to what we deem to be the fundamental error in the case. This was the holding by the court that the facts and circumstances put and offered in evidence by the defendant neither tended to contradict the positive evidence of the plaintiff nor to impair its credibility.

We have consistently held that a mere failure to produce direct contradiction to the testimony of a witness does not necessarily entitle such testimony to be deemed true. It must still

stand the test of credibility, in the light of all the circumstances surrounding the transaction. · This is ·particularly true in those cases where, from its very nature, no evidence is available to the ·adverse party to contradict such testimony. We have also held that it is a rare case where· a party having the burden of proof can be entitled to a directed verdict. Circumstances may be produced and relied on to show improbability and unreasonableness and inconsistency, and the nature· of such circumstances is as varied, and the scope thereof as wide, as the field of human affairs. · *Holmes v. Connable*, 111 Iowa 298; *Arnd v. Aylesworth*, 145 Iowa 185; *Bremer v. Haag*, 151 Iowa 449; *In re Estate of Chismore*, 166 Iowa 217; *Young v. McClannahan*, 187 Iowa 1184. The general nature of the facts and circumstances relied upon by the defendant will appear in the following recital: Prior to December 2, 1922, one Strasburger was the majority stockholder and general manager of the business of the corporation. On the date named, he died. Next in interest in the corporation was Bennett, whose wife owned 31 per cent of the stock. At the time of the death of Strasburger; the plaintiff had been in the employ of defendant-corporation as a bookkeeper for the period of one year. His employment began upon a salary of $35 per week, which sum was raised to $50 per week sometime prior to January 1, 1923. Upon the death of Strasburger, Bennett became the general manager. One of the contentions pressed by the defendant was that, upon the death of Strasburger, Bennett and the plaintiff entered into collusion to manipulate the business of the company to their own benefit; and that they worked together to that end. On or before January 1, 1923, the plaintiff became a stockholder, director, and vice president of the corporation. The extent of his interest as stockholder is not disclosed in the record; but the inferences therefrom are that such interest was nominal. At a directors' meeting on January 1, 1923, the plaintiff offered the following resolution:

"And thereupon, the said directors and officers still being present, A. E. Schulte [plaintiff] *presented* the following resolution and moved its adoption:

"Resolved, that *Henry Bennett* be continued as manager for the ensuing year, of the Ideal Food Products Company (Del.) and that he, as such manager, is hereby delegated general powers

to manage the business and affairs of the company, to hire employes and *fix the pay and salaries thereof, including his salary*, and the right to discharge such employes, to purchase goods for manufacturing purposes, to make or authorize sales thereof, and to carry out the method and plans of conducting the company's business adopted in the past, and *is authorized to draw checks on moneys deposited in the bank or elsewhere*, and to do all things necessary with a view of carrying out the object of the company, and as in his judgment may seem best.''

This resolution had been prepared by Bennett. It was carried, and became a part of the record of the meeting, and was put in evidence by the plaintiff in proof of the authority of Bennett to make the contract alleged with the plaintiff. No memorandum or record of this contract was ever made, nor was it ever reported to the directors. The evidence tended to show harmonious co-operation between Bennett and the plaintiff. Friction arose, however, as between them and the other interests. A meeting of stockholders was called by due notice upon May 26, 1923. This call was hostile to Bennett and to the plaintiff. At such meeting, Mrs. Strasburger (widow of Strasburger) was elected as manager, in lieu of Bennett. Immediately preceding the directors' meeting, the plaintiff drew, and Bennett signed, three checks, purporting to be drawn by the company, as follows: On May 25th, one check for $2,500, payable to plaintiff, and one for $8,000 payable to Bennett; and again on May 26th, one check for $10,500, payable to Bennett. These checks were immediately cashed. The defendant claims that the issue of these checks was wrongful and fraudulent. In subsequent litigation, Bennett was required to return $13,500 of the amount thus drawn by him. In subsequent litigation also, the plaintiff testified concerning the $2,500 check issued to himself, and such testimony figures in the present record.

Owing to contesting litigation, Mrs. Strasburger did not take possession of the office as manager until August 8th. In the meantime, the plaintiff and Bennett continued in charge of the business. On August 8th, the right to conduct the business as manager was judicially awarded to Mrs. Strasburger; whereupon she appeared at the office of the corporation, with her attorney, while plaintiff was in charge thereof, and requested possession of the books of the corporation, and particularly the rec-

ord of checks drawn. The plaintiff refused to comply with such request. He immediately placed all the records in the safe and locked the same. The combination of the safe was unknown to Mrs. Strasburger and to her helpers, and she finally gained access to the contents of the safe only after a week's effort, and with the help of experts, who drilled the same. Immediately after thus locking the safe, the plaintiff secretly drew another check, payable to himself, for $1,500, and later obtained the signature of Bennett thereto. Before it was presented at the bank, payment had been stopped thereon. Because of his conduct here recited, Mrs. Strasburger purported then and there to discharge him. The defendant offered other testimony tending to sustain the rightfulness of the plaintiff's discharge, but the court refused this evidence. In the final ruling, the court held, as a matter of law, that the discharge by Mrs. Strasburger was wrongful, and that the plaintiff was entitled to compensation, based upon the business of the corporation, for the full calendar year of 1923.

It appears also that, from the first of January, 1923, the plaintiff had drawn regularly $50 a week, to a sum total of $1,550, up to August 8th. One week after his discharge, he was a witness in a case pending between the defendant-company and Bennett, and was interrogated therein concerning his own attitude as to his right of compensation from the defendant-company. On that occasion, he apparently took the ground that $50 per week was to pay him only for his services as bookkeeper, and that he was entitled to extra compensation for special services. A part of the record of his evidence at that time is as follows:

"Q. So altogether you claim your extra services amounted to $4,000? A. Yes, that was the agreed price. Q. All the extra work that you drew the $4,000 check for, was done while you were drawing a regular weekly salary from this company as bookkeeper at $35 per week to start with, and $50 per week up until the time you quit down there? A. Yes, sir. Q. This $4,000 had no specific application at all; it was just payment on general claims, without being specified what the claims were,— is that correct? A. Just a recognition of special services,—call it claim or whatever you are a mind to. Q. You put in a full day as bookkeeper and $4,000 worth of work besides, did you? A. Yes. Q. But you drew out $2,500 of the company's money on that day? A. I did. Q. What was that for? A. For spe-

cial services. Q. What was the $1,500 check for you for? A.
The same proposition. Q. Are there any other checks coming to
you on that same proposition? A. Not that I know of."

Upon the trial of the case at bar, the plaintiff was interro-
gated concerning his former evidence. The record above quoted
was laid before him, and he was thereupon interrogated as
follows:

"Were those questions asked you, and did you make those
answers at that time and place? A. I don't recall now,—pos-
sibly I did. Q. You say you possibly did? A. I wouldn't care
to testify; without the record on that particular case, although I
am not positive. Q. I will hand you the record, if it will re-
fresh your recollection. [Counsel hands witness transcript of
former testimony.] Read that record, and then state to the
court if you are not quite positive that you did make those
answers to those questions at that time. A. I wouldn't know
any more about it after reading the record than before.

"Mr. Johnson: What is your best recollection? Is it your
judgment that you answered them or that you didn't? Answer
this question. A. I don't recall whether I did or didn't."

His testimony in the case at bar is that his contract with
Bennett gave him 3 per cent of the gross sales, and that the $50
per week was to be applied as part payment thereon. Nothing
was said in his former evidence concerning 3 per cent, and
nothing is claimed in his present testimony concerning pay for
special services.

The foregoing is a sufficient statement to indicate the char-
acter of defendant's challenge to the credibility of plaintiff's
testimony. It may be added that defendant's counsel pressed
diligently upon the attention of the trial court the contention
that, because the plaintiff and Bennett were directors of the
corporation, they sustained a fiduciary relation thereto, and that
they were not at liberty to make contracts in its behalf bene-
ficial to themselves without subjecting such contract to the test
of reasonableness and good faith. As against the foregoing, the
appellee contends that the defendant's pleading did not war-
rant the consideration of the matters here set forth, and espe-
cially that the plea of fraud was bad, for want of specification.
The third division of defendant's answer, purporting to plead

2. Appeal and
Error: harmless error: nonexplanatory questions: nonapplicability of rule.

fraud and collusion, was indeed inadequate for any affirmative purpose. The answer did plead adequately the discharge of the plaintiff on August 8th. The matters above set forth were, in the main, legally available to the defendant in support of its general denial, and without any pleading asking affirmative relief. It was all matter which could have been inquired into on cross-examination of the plaintiff. Much of the rejected evidence was so rejected on cross-examination. As to adverse rulings rejecting evidence, it is argued by appellee that error, if any, is not available to the appellant, for want of a showing or statement as to what the evidence would be, if answer had been permitted. The rule thus invoked has little, if any, application to cross-examination, and especially to the cross-examination of a hostile witness. The right of cross-examination of the adversary's witness is quite distinct in character from the right of a party to examine his own witness for the purpose of adducing facts. The right to cross-examine is quite absolute. It inheres in the right of the adversary to use the testimony of the witness at all. One of its purposes is to test the credibility of the witness. The refusal of such right cannot be justified by saying that the answer of the witness would not have been favorable to the cross-examiner. Unfavorable answers are often as dangerous to the witness as favorable ones. An answer unfavorable to the cross-examiner may be more incredible than a favorable one would have been. If incredible, the credibility of the witness is thereby impaired. The consistency of the witness also may be thus put to the test. In *Glassman v. Chicago, R. I. & P. R. Co.*, 166 Iowa 254, we said that the refusal of proper cross-examination was "a denial of an absolute right, and has been generally held to be sufficient ground for reversal."

But the main argument is directed to the contention that these matters above set forth did not in any manner contradict or negative the alleged contract testified to by Bennett and by the plaintiff, and that, whatever might be said as to these collateral matters, such principal testimony still stood uncontradicted. This argument discloses in a nutshell the erroneous conception of the law which underlies the entire record. It carries the assumption that a burden rested upon the defendant to dis-

prove something. This was exemplified by the court at the time
of sustaining the final motion, as is indicated by the following
excerpts from the stated reasons which influenced the court to
the decision reached:

"Now, respecting plaintiff's motion for a directed verdict.
This presents the real question in this case: that is, whether or
not there is sufficient evidence in the record to support a verdict
for the defendant in case the jury should return a verdict for
the defendant. That involves: 1st, the question as to whether or
not there is sufficient evidence from which the jury could find
that the alleged oral contract sued upon *was not entered* into
between the defendant corporation and the plaintiff. * * *.

"Now, Mr. Bennett testified that he did make the contract,
and Mr. Schulte testifies that the contract was in fact made.
This testimony is clear. Now, what is there in the record to dis-
pute the testimony of Mr. Bennett and the testimony of Mr.
Schulte on that proposition? * * * And it is claimed that these
alleged statements tend to show that this contract was not in
fact made. There is no statement in that record by Mr. Schulte
to the effect that the contract was not made. His alleged admis-
sions, to say the most, are mere inferences that the contract sued
upon now was not in fact made.

"The question there is whether or not there is any state-
ment made by Mr. Schulte on the former trial which is incon-
sistent and which disputes his testimony given on the trial of
this case, and whether it disputes to such an extent and to such
a degree as that it is sufficient evidence upon *which to support
a verdict in favor of the defendant* upon that point if the ver-
dict should be in favor of the defendant, in case it were sub-
mitted to the jury upon that branch. * * *

"I think in this case, if this jury should bring in a verdict
for defendant, finding that this contract was not in fact entered
into, it would be lacking in that sufficient degree of proof that
the law requires to support it, and it would be the duty of the
court to set it aside. * * *

"The Court: I think, Mr. Dennis, that it is inferences that
might be drawn from this admission. They are mere inferences,
and those inferences to be drawn from those alleged admissions
are not of sufficient weight to outweigh the positive statement of

Mr. Schulte to the effect that they did engage in and did enter into this contract.

"Now, it is a well settled rule of law, too, that a mere inference, or mere inferences, are not of sufficient weight to carry an issue to the jury, in the face of and against positive testimony to the contrary. * * *

"Now, there is no dispute as to what was said at that time, excepting as you claim that by inference that Mr. Schulte admitted something to the contrary when he testified in the trial of the other case. * * *

"I am satisfied it would be the duty of the court to set aside any verdict this jury might return in favor of the defendant upon the proposition that this contract was not entered into. It would be lacking in any sufficient support,—it would be lacking in that degree of strength and force that the law requires, upon which the jury might base a finding."

It will be seen from the foregoing that the court deemed it its duty to hold the defendant to an affirmative burden of proof. There was no burden upon the defendant. The burden was at all times upon the plaintiff, not only to produce affirmative testimony in support of his claim, but such testimony as should command the credence of the jury, in the light of all the circumstances surrounding the transaction. Positive evidence *may be* overcome by unfavorable inferences arising out of collateral circumstances. This is often the only test available, and often, too, a most effective one. There was no burden upon the defendant to prove that the "contract was not made." Nor was it requisite that the jury should find that the contract was not made, in order to render a verdict for the defendant. A verdict for the defendant would have meant that the credibility of plaintiff's testimony had failed, in the light of all the circumstances disclosed.

The circumstances here indicated were quite abundant as a challenge to the credibility of the evidence on behalf of plaintiff, and should not have been ignored, as such. The weight of plaintiff's evidence became clearly a question for the jury, and the order directing a verdict for the plaintiff for the full amount of his claim was necessarily erroneous.

In our foregoing statement of the facts and circumstances relied upon by the defendant, we are not to be understood as

expressing or intimating our own present views as to the weight of defendant's evidence or. as to the truth or falsity thereof. Nor are we to. be understood. as expressing or intimating our view as to the truth or. falsity of the plaintiff's testimony. What we hold. is that the question of truth or falsity of all the evidence was clearly for the jury.

The judgment below is, accordingly, reversed.—*Reversed.*

. DE GRAFF, ALBERT, and MORLING, JJ., concur.