RONALD BRADSHAW, appellee, v. IOWA METHODIST HOSPITAL, appellant.

No. 50512.

JUNE 12, 1962.
REHEARING DENIED JULY 23, 1962.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellant.

Lex Hawkins, of Des Moines, for appellee.

HAYS, J.—This is the second appearance of this case in this court. It is an action for damages based upon the alleged negligence of the defendant and in each instance there has been a verdict for the plaintiff. See Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167.

Appellant's assigned errors include rulings upon admission of testimony on objections based upon section 622.10, Code of Iowa; on causation; on instructions; and excessive verdict.

Briefly, plaintiff asserts he was a patient in defendant-hospital in March 1957, undergoing physiotherapy treatment following a back operation in October 1956. He asserts that while taking a treatment on March 30, 1957, he was left unattended and sustained a fall which resulted in a permanent disability. More facts will be stated as they may be relevant to the respective alleged errors.

I. Defendant asserts error in the rejection of proffered testimony of Dr. Joseph G. Schupp, and Exhibit Z, being plaintiff's hospital records while a patient in the Englewood Hospital in Chicago between April 19 and 23, 1957. They were rejected upon the plaintiff's claim of privilege under section 622.10, Code of Iowa.

This section, entitled Communications in professional confidence, provides as follows: "No * * * physician, surgeon * * *, who obtains such information by reason of his employment * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice * * *. *Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred.*" (Italics ours.) We are chiefly concerned with above italicized portion, it being defendant's contention that *such rights* were waived.

Section 622.10 has been in all Iowa Codes since 1851 in substantially its present form. It has been before this court on numerous occasions from which certain basic rules or constructions have arisen relative thereto. It appears clear both from our own decisions and of other jurisdictions that its purpose and intent is based upon the thought that such a right will encourage a patient to make a full and frank disclosure of his ailments to his physician free of any fear of disclosure by the physician, as a witness in court proceedings, of information which might result in his humiliation, embarrassment or disgrace, *if such ailments were made public.* Pearson v. Butts, 224 Iowa 376, 276 N.W. 65;

Newman v. Blom, 249 Iowa 836, 89 N.W.2d 349; 58 Am. Jur., Witnesses, section 420; 97 C. J. S., Witnesses, section 293; McCormick on Evidence, section 101.

It is also generally held that once the relationship of physician and patient is established (it is so conceded here), the right or privilege thus granted is personal to the patient and only he may claim or waive the same. McConnell v. City of Osage, 80 Iowa 293, 45 N.W. 550, 8 L. R. A. 778; Burgess v. Sims Drug Co., 114 Iowa 275, 86 N.W. 307, 54 L. R. A. 364, 89 Am. St. Rep. 359; 58 Am. Jur., Witnesses, section 438. "Communications" as used in the statute means not only what may be said but also information obtained by the physician through personal observation and examination of the patient. Prader v. National Masonic Accident Assn., 95 Iowa 149, 63 N.W. 601; Newman v. Blom, supra, 249 Iowa 836, 89 N.W.2d 349.

While it has been the announced policy of this court to give a liberal construction to the statute to effectuate the purpose thereof, we have in more recent years come to the realization that there is a growing tendency to use it in a manner that tends to obscure the truth from the witness stand and to thwart justice, rather than foster it. JUSTICE BLISS, speaking for the court in Boyles v. Cora, 232 Iowa 822, 848, 849, 6 N.W.2d 401, 414, states:

"This section, with respect to the privileged character of communications by the patient to the doctor, and observations of the latter by the doctor, particularly within the more recent years, has been criticized as having but little justification for its existence, and of effecting great injury to the cause of justice by the suppression of useful truth, the disclosure of which ordinarily could harm no one", citing Wigmore on Evidence, section 2380, wherein it is said *the privilege is not to be both a sword and a shield.*

Also therein appears the following quote from Epstein v. Pennsylvania R. Co., 250 Mo. 1, 41, 156 S.W. 699, 712, 48 L. R. A., N. S., 394, Ann. Cas. 1915A 423, as follows:

" 'It is obvious, the language of the statute is of such sort that its interpretation and application are troublesome. But, because the task is difficult, shall it be made easy by ignoring it? or by applying the statute automatically to every case and all infor-

mation? On the one hand, it might be so construed as to fritter away the provisions of the law. On the other hand, it might be so literally construed as to work great mischief in the administration of justice. The ultimate object of every judicial inquiry is to get at the truth. Therefore, no rule of law standing in the way of getting at the truth should be loosely or mechanically applied. *The application of such law must be with discrimination so that it may have the legislative effect intended for it and yet the investigation of the truth be not unnecessarily thwarted.'* " (Italics ours.)

The statute itself provides that the privilege may be waived but is silent as to how it may be waived. This court has stated that such a waiver may result by the patient's own testimony, by testimony he may offer by his own physician, or by the testimony of his other witnesses. Woods v. Incorporated Town of Lisbon, 150 Iowa 433, 130 N.W. 372; Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N.W. 891. One other observation before getting into the facts of the instant case. In Johnson v. Kinney, 232 Iowa 1016, 1023, 7 N.W.2d 188, 192, 144 A. L. R. 997, we said, "We have frequently said that testimony on cross-examination is not voluntary in the sense that it constitutes a waiver of the statutory privilege", citing authorities. The opinion does not show what was said on direct examination of the plaintiff but merely that appellee testified on cross-examination. We also have another rule of law dealing with the right of a litigant to cross-examine. In Eno v. Adair County Mutual Ins. Assn., 229 Iowa 249, 257, 294 N.W. 323, 327, we approved the rule that "It is also quite generally held that where the testimony of a witness on direct examination makes a prima facie case, or *creates a presumption or inference as to the existence of a fact not directly testified to,* the witness may be cross-examined to rebut such prima facie proof, presumption or inference." (Italics ours.) See also Witmer v. District Court of Polk County, 155 Iowa 244, 136 N.W. 113; Glassman v. Chicago, R. I. & P. Ry., 166 Iowa 254, 147 N.W. 757; Schulte v. Ideal Food Products Co., 203 Iowa 676, 213 N.W. 431; Trachta v. Iowa State Highway Commission, 249 Iowa 374, 86 N.W.2d 849; Wheatley v. Heideman, 251 Iowa 695, 710, 102 N.W.2d 343; 58 Am. Jur., Witnesses, section 632. We think the correct rule as applied to a waiver

under section 622.10 (physician and patient) is that where the patient on direct examination, as his own witness, testified to certain facts such as would bring into effect the rule announced in Eno v. Adair County Mutual Ins. Assn., supra, such testimony creates a waiver of section 622.10 so as to permit competent evidence by his adversary, either by cross-examination or by his own witnesses, to rebut or refute the presumption or inference left by the patient's direct testimony. Such a rule is not necessarily in conflict with the case of Johnson v. Kinney, supra, and clearly attains justice without nullifying the statute. 97 C. J. S., Witnesses, section 310c.

Now as to the facts of the instant case. Plaintiff, a millwright by trade, testified he was injured in September 1956 by a fall while employed at the Maytag Company in Newton, Iowa. He placed himself in the care of Drs. Joseph Schupp and Neil McGarvey, of Des Moines, Iowa, and was placed in defendant-hospital. They were partners in the practice. Dr. John Bakody, a neurosurgeon, of Des Moines, was called into consultation and in October 1956 he operated and removed a protruded and degenerated intervertebral disc material at the fifth lumbar level. He also examined at the fourth level and found no injury there. Plaintiff left the hospital about a week later. He continued to receive postoperative treatments under the supervision of the three doctors, Schupp, McGarvey and Bakody. On March 30, 1957, while taking physiotherapy treatments at defendant-hospital, he fell and sustained the injury alleged to have caused his disability. He was released April 4, 1957, in an improved condition. April 18 he went into Chicago, and on the 19th while in a café he stooped to pick up an object from the floor and suffered intense pain in his back and legs. He was taken to Englewood Hospital as an emergency case, where he was treated for four days and released. He returned to Iowa and consulted with Doctor Schupp at least as late as April 30, 1957. He made two trips to the Mayo Clinic in Rochester, Minnesota, and in December 1957 Doctors Johnson and Miller, of the clinic, operated for a ruptured intervertebral disc at the *fourth* level and a spinal fusion was done. His testimony is replete with statements of his constant pain and suffering, including the Chicago episode.

Doctor Johnson, as his witness, testified as to his condition and the operation. Dr. R. H. Borman, an osteopathic physician, of Des Moines, was his witness. He saw him twice in April 1960. He testified that according to the history given him by plaintiff he was in Chicago and had a recurrence of the burning pain of the right calf and was hospitalized in that community for approximately one week. Doctor Bakody also appeared as plaintiff's witness. He detailed his condition in October 1956 and stated he continued to advise during the convalescent or postoperative period. While it is clear that at no time when Doctor Bakody saw plaintiff was Doctor Schupp or Doctor McGarvey present, it is equally clear that they were in touch with each other with reference to plaintiff's case.

While plaintiff was a witness and on cross-examination he was asked: "Q. Now referring to your admission to the Englewood Hospital, Mr. Bradshaw——." The jury was excused and objection under section 622.10 was made to cross-examination on any matters contained in the Englewood Hospital records. It appears counsel had the record before him while cross-examining. The objection was sustained. We think cross-examination on this subject was proper. No records were being offered at that time. Plaintiff, having opened the subject of the Chicago hospitalization for the evident purpose of showing further hospitalization was the effect of the March 30th fall, waived any right to a privilege relative thereto.

Doctor Borman's testimony went further than that of the plaintiff in that he stated the nature of the treatment that was received at Englewood Hospital. This also constituted a waiver of the privilege by plaintiff in offering such proof. The defendant, in the absence of the jury, offered and read into the record the Englewood Hospital records. It shows that as part of the history it was stated as to how the accident happened: "That he was raising up from a squatting position and something seemed to break in his back. He had had surgery in Des Moines, Iowa, for a slipped disc six months before and wears a corset." The foregoing, known as Exhibit Z, should have been received in evidence and the refusal constituted error. The records were kept by the custodian thereof and shown to be authentic, made in the usual course of business and the manner of making them.

They were not vulnerable to the objection of hearsay. Ver Steegh v. Flaugh, 251 Iowa 1011, 1018, 103 N.W.2d 718, and authorities cited therein.

As to the offered testimony of Doctor Schupp—defendant offered to show that Doctor Schupp was in consultation with Doctor Bakody during the convalescent or postoperative treatment of plaintiff as late as April 30, 1957; that patient told him on that date he was in Chicago and fell and hurt his back again. This was refused as privileged. We think such was competent under the rule announced in 58 Am. Jur., Witnesses, section 457, to the effect that when two or more physicians attend a patient in consultation, the patient's waiver as to one such physician of the confidential-communication privilege effects a waiver of the privilege as to the other physician. See also Woods v. Incorporated Town of Lisbon, 150 Iowa 433, 130 N.W. 372; 97 C. J. S., Witnesses, section 310d. Plaintiff examined Doctor Bakody as to his relations with him during the convalescent or postoperative period which waives the privilege as to other physicians who worked as a unit with him during the same period. It was error to exclude this proffered testimony.

Perhaps it may be said with some degree of accuracy that we are herein adopting a rule going beyond any of our previous announcements. However, we are determining the case upon its own peculiar facts and do not hesitate to say that in our research we have found no parallel case. Nowhere in the record has plaintiff attempted to keep it a secret from the public, the nature and extent of his physical ailments, which is the real purpose of the statute. He does however attempt to hide behind the statute as to what happened in Chicago some two or three weeks after the fall upon which he predicates his cause of action. He uses the Englewood hospitalization to show a continuation of his continuous pain and suffering since the fall, but bars any facts which might show a subsequent injury to have been the cause or a cause of his present disability. He refuses to accept the bitter with the sweet. To substantiate the above observations we quote from the record as follows: On cross-examination:

"Q. Now, Dr. Bakody, do you know anything about an injury or an accident to Mr. Bradshaw in Chicago in April of 1957?

"Mr. Hawkins: Your Honor, I object to the form of the question, the injury or accident in Chicago. It is not in the record. It will not be in the record. Mr. Cooney knows it will not be in the record.

"Mr. Cooney: I can't tell that.

"Mr. Hawkins: Mr. Cooney, that is what this lawsuit might be about. * * *."

In the absence of the jury the question was reframed:

"Mr. Cooney: Dr. Bakody, did you have any exchange of information with either Dr. Schupp or Dr. McGarvey with respect to any injury or accident in Chicago sustained by Mr. Bradshaw?" Doctor Bakody answered in the affirmative.

All of this was rejected under section 622.10. It is a clear case of using the privilege as a sword not a shield.

Plaintiff in argument quotes from In re Estate of Hill, 232 Iowa 1000, 1003, 6 N.W.2d 835, 836, as follows: "We have held that where two trials have been had, each resulting in a verdict for the same party, the error which will justify a reversal and a third trial should be so clear as to fully demonstrate that a failure of justice will occur if this court does not again interfere." We adhere to that statement but say that "a failure of justice" does not mean that upon a retrial a different finding by the jury will result, but that there is a failure of justice when a party litigant has been deprived of a trial in conformity to the laws. This is such a case.

II. Appellant assigns further error in the trial court's holding that the facts created a jury issue upon the question of causation. The specific objection is that Doctor Borman testified that the March 30th fall was the probable cause of *a condition of ill-being* he found concerning plaintiff. While we feel the use of such a term is vague and indefinite, yet the record so clearly shows the condition of the plaintiff that no misconception resulted from the use of such words and there is no error in such ruling.

While other errors are assigned we do not feel they merit comment in view of the fact the case must be reversed.—Reversed and remanded.

LARSON, PETERSON and SNELL, JJ., concur.

1368

THORNTON, J., GARFIELD, C. J., and OLIVER and THOMPSON, JJ., dissent.

MOORE, J., takes no part.

The members of this court being equally divided, the judgment of the trial court stands affirmed (section 684.10, Code, 1962).

THORNTON, J. (dissenting)—Finding myself unable to agree with the majority opinion, I respectfully dissent.

I. The majority opinion holds plaintiff waived the physician-patient privilege afforded him by section 622.10, Code of Iowa, 1958, by his own testimony and examining Doctor Borman and Doctor Bakody. Defendant-hospital does not contend the privilege was waived by plaintiff's own testimony or that of Doctor Borman. Its contentions here relative to the waiver of the physician-patient privilege are contained in Division I of its excellent Brief and Argument. It assigns two errors. Error No. 1 is, the trial court erred in excluding testimony of Doctor Schupp and Doctor Bakody offered by the defendant. Under this error defendant urges four brief points, they are: 1. Plaintiff waived the physician-patient privilege as to Doctor Schupp by examining a physician who treated plaintiff jointly with Doctor Schupp and who was Doctor Schupp's partner in the practice of medicine; 2. Plaintiff waived the physician-patient privilege as to Doctor Schupp and Doctor Bakody by examining Doctor Bakody, a specialist, who consulted with Doctor Schupp in the course of the treatment of plaintiff; 3. Plaintiff waived the physician-patient privilege by requesting a copy of the findings and report of a physician who examined plaintiff on behalf of the defendant, during the cross-examination of said doctor; and 4. The physician-patient privilege does not extend to communications made by patient to physician which are not related to patient's treatment.

Error No. 2 is, the trial court erred in excluding the proffered testimony of Janet A. Jodis and the proffer of a portion of Exhibit "Z" (being a portion of the record of Englewood Hospital in Chicago, Illinois, relating to appellee), and urges brief point 1, waiver of the physician-patient privilege extends

to hospital records, and brief point 2, by examining one or more of his physicians as to privileged matters, plaintiff should be held to have waived the physician-patient privilege as to other physicians or hospitals treating the same condition.

The discussion by the majority of a waiver occasioned by plaintiff's testimony and of his examination of Doctor Borman is a gratuitous venture.

II. Defendant contends where consulting physicians are engaged in a unified course of treatment of a patient the examination of one of said doctors as to privileged matter waives the privilege as to the others. The determination of this question requires first the determination of some preliminary questions of fact. The physicians must be consulting physicians on the condition or disease of the patient at the time of the exchange of information between them or knowledge acquired by examination which is claimed to be privileged. We held in Woods v. Incorporated Town of Lisbon, 150 Iowa 433, 130 N.W. 372, where two or more physicians are engaged in the same operation, a waiver by plaintiff's own testimony of all of the matters connected with the operation makes all of the physicians competent witnesses. The waiver was occasioned there by the patient's testimony describing in detail the condition and operation. See pages 436 to 439 inclusive of 150 Iowa, and pages 373 to 375 inclusive of 130 N.W.

In Baxter v. City of Cedar Rapids, 103 Iowa 599, 604, 605, 72 N.W. 790, where several different physicians treated the decedent after the accident, the placing of one of them on the stand did not waive the privilege as to the other physicians. See also Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N.W. 891. This preliminary determination appears in each of the following authorities cited by defendant: Doll v. Scandrett, 201 Minn. 316, 276 N.W. 281; Schlarb v. Henderson, 211 Ind. 1, 4 N.E.2d 205; Morris v. New York, Ontario and Western Ry. Co., 148 N. Y. 88, 42 N.E. 410, 51 Am. St. Rep. 675; and Cretney v. Woodmen Accident Co., 196 Wis. 29, 219 N.W. 448, 62 A. L. R. 675. See the distinction made of Penn Mutual Life Ins. Co. v. Wiler, 100 Ind. 92, 102, 50 Am. Rep. 769, 772, at page 207 of 4 N.E.2d in Schlarb v. Henderson, supra.

This determination was made adversely to defendant by the trial court in passing on defendant's motions for judgment notwithstanding the verdict and for a new trial. See pages 433, 434 and 435 of the Record.

III.   Plaintiff's claim here is based on a fall suffered by him in defendant-hospital March 30, 1957. His claim is, this fall injured his back at the fourth lumbar level, that he was operated for this injury at Mayo Clinic December 12, 1957, and is permanently disabled because of this fall. Plaintiff had suffered a prior fall in September 1956 and was operated by Doctor Bakody in defendant-hospital October 20, 1956. At that time Doctor Bakody removed degenerated intervertebral disc material at the fifth lumbar level 'and surgically explored and inspected the fourth lumbar area and found it normal. The point of his testimony, though it is voluminous, is to show the fourth lumbar area normal at that time. As a result of the September 1956 fall plaintiff employed Doctors Schupp and McGarvey. They are internists and both of them treated plaintiff. They placed him in the hospital October 11, 1956. Plaintiff was referred to Doctor Bakody, a neurosurgeon. The record shows Doctors Schupp and McGarvey do not perform surgery, at least of the type required by plaintiff, and that they refer this type of patient to Doctor Bakody for surgery. Doctor Bakody says he was asked to see this patient in consultation by consultation request signed by Doctor Schupp. This was done October 15, 1956. Plaintiff gave his history to Doctor Bakody. There is no record that either Doctor Schupp or Doctor McGarvey did. Neither Doctor Schupp nor Doctor McGarvey was present when Doctor Bakody operated on plaintiff. Doctor Bakody made his own independent diagnosis and performed the operation without consultation in that regard with either of the other two doctors. On October 28, 1956, plaintiff was discharged from the hospital. There is no record, either of the hospital or the doctors, Doctor Bakody saw plaintiff after that date for postoperative treatment except on January 9, 1957. The hospital records show the hospital dates and Doctor Bakody's records show the January 9, 1957, date. He saw plaintiff at that time and was of the opinion plaintiff was able to do light work. On January 14, 1957, he directed a note to Doctor Allen of Newton concerning

plaintiff. The next time there is any record of Doctor Bakody seeing plaintiff is a hospital record of Broadlawns showing he saw plaintiff November 27, 1957. At that time Doctor Bakody was on the neurological services at the hospital furnished by the Polk County Medical Society without charge. He then directed physiotherapy for plaintiff. He saw plaintiff with Doctor Hanford, an intern or resident. There was an exchange of information between Doctor Hanford and Doctor Bakody. There is no record Doctors Schupp and McGarvey were then treating plaintiff. On cross-examination Doctor Bakody was asked concerning the practice of doctors in consulting and exchanging information. He explains their practice, that such may be done by notations on hospital charts, letters, phone calls, and personal conversations. But there is no showing here of any consultation between Doctor Bakody and either Doctor Schupp or Doctor McGarvey after plaintiff left the hospital October 28, 1956. There is no showing Doctor Bakody advised the other doctors or that they sought his advice. Doctor Bakody, explaining generally, but not in reference to plaintiff, stated the length of the postoperative period is usually six months and may run to two years. He does not claim to have seen plaintiff except as pointed out above or discussed with Doctors Schupp and McGarvey plaintiff's condition or treatment during that period. Plaintiff was hospitalized from November 25, 1956, to December 7, 1956, in Mercy Hospital. Testifying after examining the hospital record, Doctor Bakody states:

"* * * This patient was not under my care during this hospitalization. * * * I did not leave any orders on him that I can see in glancing through the record. I may have dropped in to see him socially * * *."

The record does not substantiate a finding Doctor Bakody and Doctors Schupp and McGarvey were furnishing unitary treatment for plaintiff except during the hospitalization for the October 20, 1956, operation. January 9, 1957, was the only other time Doctor Bakody saw plaintiff in connection with that operation. Doctors Schupp and McGarvey hospitalized plaintiff in March 1957, at which time he suffered the fall complained of. Doctor Bakody had no connection with this. Plaintiff was released April 4, 1957.

The next time plaintiff visited any of these doctors was April 15, 1957, he saw Doctor Schupp. Again on April 30, 1957, he saw Doctor Schupp. On the occasion of this visit plaintiff disclosed to Doctor Schupp he had fallen and hurt his back again while in Chicago as shown by the doctor's notes. The doctor had received a report plaintiff was admitted to the Chicago hospital April 19, 1957, from the Chicago doctor who had treated plaintiff and he received some communication from a Chicago hospital. It is this information concerning the fall in Chicago and the hospital record concerning it defendant wants placed in evidence and plaintiff contends is privileged. Defendant contends plaintiff waived the physician-patient privilege by examining Doctor Bakody relative to the October 1956 operation, and Doctor Schupp must now testify as to the matters disclosed to him by plaintiff on April 30, 1957. From the dates heretofore set out and the services performed by the doctors I would hold the doctors were not then, April 30, 1957, engaged in a unified course of treatment of plaintiff.

To put this in proper perspective it should be noted that Doctor Bakody, when asked if he had an exchange of information with either Doctor Schupp or Doctor McGarvey to any injury or accident in Chicago sustained by Mr. Bradshaw, stated he did recollect a conversation with either Doctor Schupp or Doctor McGarvey indicating there had been an additional injury, but was unable to fix the time of the conversation and in response to the question, "Would it be in the year 1957?", answered, "Well, this is '60. My guess is it would be two years ago, which would make it '58, I guess; could have been '57." The conversation could not have been before April 30, 1957. Neither Doctors Schupp nor McGarvey saw or treated plaintiff after that date. And if it were held in 1958 it was simply unprofessional gossip. Doctor Bakody's testimony, when analyzed and the qualification and hypothetical material deleted, refers only to the October 20, 1956, operation.

The information given by plaintiff to Doctor Schupp on January 19, 1957, that he, plaintiff, had fallen two weeks before is likewise privileged and not waived by the examination of Doctor Bakody for the same reason. This is also true of the

Chicago hospital records. If the information thus obtained was used professionally it was only used by Doctor Schupp.

In Johnson v. Kinney, 232 Iowa 1016, 1023, 7 N.W.2d 188, 192, 144 A. L. R. 997, we stated: "However, it is clear that appellee did not waive his privilege as to Dr. Jones' evidence by offering testimony of the two other doctors who had treated him on different occasions."

In Pearson v. Butts, 224 Iowa 376, 387, 276 N.W. 65, 70, we emphasized the following statement from Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N.W. 891: "* * * And that the naked fact that plaintiff makes a witness of one of her doctors does not give consent that defendant may make one of any or all other of plaintiff's doctors and have them testify on the same general subject to which the witness of plaintiff spoke."

The Johnson and Pearson cases show the state of the law when the trial court ruled. If the law there announced is applied to this case the ruling of the trial court must be affirmed. There is another factor, in adopting the Rules of Civil Procedure this court and the legislature considered the question of a waiver of the physician-patient privilege and only saw fit to provide a waiver as set out in rule 133(b).

Defendant also claims the physician-patient privilege was waived by the cross-examination of Doctor McGarvey by plaintiff. Defendant placed Doctor McGarvey on the stand and he testified from the hospital records in his handwriting, in part as follows:

"Referring to Exhibit 22, the hospital record of Ronald Bradshaw between March 21, 1957, and April 4, 1957. I find an entry in my handwriting in the 'progress notes' section dated March 23, 1957. It reads: 'Large anxiety state; still much backache, secondary to intervertebral disc surgery; good night's sleep.'"

And he further testified, "It was our feeling at that time that the statement 'still much backache, secondary to intervertebral disc surgery' was part of the convalescent period following the disc operation performed by Dr. Bakody in October of 1956."

Plaintiff on cross-examination asked this question:

"Doctor, then, I take it, that it was not your impression that when this man was admitted to the Iowa Methodist Hospital on

March 21, 1957, that he was suffering from a herniated inter-vertebral disc at the fourth level; I take it that that was not your diagnosis?" Answer, "That's correct."

Defendant urged in the trial court the privilege was waived because the doctor was examined with respect to his impressions of the condition of Mr. Bradshaw without reference to the hospital record. And it claims here the cross-examination was not in response to the direct testimony.

The direct examination showed what the doctor placed in the hospital record as well as his impressions of the meaning of what he placed there. The cross-examination clarified the doctor's impression and the meaning of what he had written. To that extent it was responsive.

Appellant does not cite an authority for the fine line it wishes drawn here, nor have we found any.

IV. The majority opinion adopts a rule the physician-patient privilege is waived by offering evidence creating a presumption or inference as to the existence of a fact not directly testified to, and his adversary may then rebut or refute the presumption or inference either by cross-examination or his own witnesses. This and statements contained in the majority opinion relating to using the statute as a sword and not as a shield do not reflect the law as previously stated by this court.

Eno v. Adair County Mutual Ins. Assn., 229 Iowa 249, 257, 294 N.W. 323, 327, is not authority for the right to rebut the presumption or inference when the privilege is invoked.

In Eno, plaintiff's husband was on the stand as her witness. He had testified the barn described in the insurance policy was burned for a total loss. This cross-examination followed: "Q. Were you present when the barn burned? A. Yes. Q. What caused the fire? That is objected to as not cross-examination. Objection sustained."

The statement quoted from the Eno case at page 252 of 229 Iowa, page 325 of 294 N.W., and the balance of the discussion are not directed to an objection based on the husband-wife privilege, but to the objection made that the question was not cross-examination. The court did not pass on the privilege or waiver thereof. See Division III, page 263 of 229 Iowa, page 330 of 294

N.W. Nor is there any other authority for holding such constitutes a waiver.

In Battis v. Chicago, R. I. & P. Ry. Co., 124 Iowa 623, 100 N.W. 543; Reutkemeier v. Nolte, 179 Iowa 342, 161 N.W. 290, L. R. A. 1917D 273; and Donovan v. Donovan, 231 Iowa 14, 300 N.W. 656, we specifically held a privileged communication was not available for impeachment. In other words it cannot be used to defeat a falsehood.

In Howard v. Porter, 240 Iowa 153, 35 N.W.2d 837, and in Newman v. Blom, 249 Iowa 836, 89 N.W.2d 349, we emphasized the liberal construction given section 622.10 by this court in favor of the privilege. In Howard v. Porter, supra, it is held improper to comment to the jury on the failure to call the doctor or to object to his testimony.

The evidence given by plaintiff on direct examination relative to his Chicago hospitalization from which the majority find a waiver must be the following (it is the only testimony bearing on it and the majority does not bother to point it out). Plaintiff testified he went into a restaurant with a companion and went to the rest room. He then testified:

"* * * I was walking toward the sink and there was a pop bottle on the floor. I squatted down to pick this pop bottle up. I set it on the table and walked over to the sink and washed my hands and a towel was hanging on the nail. I turned around to see what she was doing and caught my hip pocket on this nail. During this episode I made no exclamation of pain. Then I came back in again and sat down at the stool. When I picked the pop bottle up I got up slow. I had always been getting up kind of slow. I squat down, I don't bend down. After I went back and sat on the stool no one helped me get back on the stool. After that I sat there and drank a little of my coffee. My leg and back hurt me so bad that I told my brother-in-law I had to have something done to it. He asked me if I wanted him to take me to the doctor or hospital or what. I told him I didn't care as long as I had some relief. He took me to the Englewood Hospital. I stayed there one week. Then I went back to Des Moines. * * *."

We have never held the mere statement that one was in the hospital for a week waived the privilege. An examination of the

testimony given by the plaintiff in Woods v. Incorporated Town of Lisbon, 150 Iowa 433, 130 N.W. 372, at pages 436 to 439 of 150 Iowa, pages 373 to 375 of 130 N.W., points out the difference. The holding of the majority actually makes the bringing of the action a waiver of physician-patient privilege. This is a matter for the legislature, not for this court. The legislature, cognizant of the state of the law, has not seen fit to make this change.

The facts testified to by plaintiff as occurring in the restaurant could be refuted by defendant either by cross-examination or other evidence.

Doctor Borman's testimony falls in the same class as that of plaintiff. It is something on which a waiver has never been based in the past. On direct examination he testified, "* * * he was in Chicago. He had a recurrence of the burning pain of the right calf and was hospitalized in that community for approximately one week. At that particular hospital he received physiotherapy and was under observation for approximately one week. * * *."

The hypothetical question contained, "* * * and was taken to the Englewood Hospital and spent some few days there, * * *."

On cross-examination he testified, "A. In my interpretation of his history, I have no record or I cannot recall any mention of injury in Chicago."

Neither plaintiff nor Doctor Borman testified to plaintiff's condition at that time.

The other errors assigned by defendant are likewise without merit.

GARFIELD, C. J., and OLIVER and THOMPSON, JJ., join in this dissent.